## TOLLESON *v.* GREENE.

1. There is no privilege exempting a person from surrendering assets to a receiver in obedience to the legal order of a court commanding him to do so, though he be under prosecution or subject to prosecution for stealing or embezzling the same. He cannot be required to make any discovery or disclosure in respect to them which would tend to criminate him, but when they are shown by competent evidence to be in his possession, his possession is not sacred by reason of being criminal or the result of criminal conduct.

2. Where there is no suggestion in the petition for *habeas corpus* of the want of jurisdiction over the subject-matter or the parties in the court ordering the imprisonment in question, and no evidence is submitted at the hearing tending to negative such jurisdiction, and the order on its face is such as the superior court, in the exercise of its equity powers, would have authority to grant with proper parties before it, and the same bears the signature of a judge of the superior court, the validity of the order is to be taken as conceded in the *habeas corpus* proceeding, and whether it was erroneously granted is not open to inquiry. If the order is to be revoked or modified, or the party purged of contempt, resort must be had to the court which passed it.

October 21, 1889.

*Habeas corpus.* Evidence. Discovery. Equity. Contempt. Jurisdiction. Practice. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1889.

Tolleson filed his petition, alleging that he was restrained of his liberty by the jailer of Fulton county under the following order :

"People's Saving Bank *v.* The Mercantile Banking Company.

"In the matter of the petition of C. S. Northen, receiver, for order to turn over assets.

"On hearing the above stated motion of said receiver and on considering the evidence, it is ordered that J. R. Tolleson and James M. Richards be and they are hereby committed to the common jail of Fulton county, there to remain until they comply with the order of the court heretofore made, with respect to the delivery of the assets of said defendant corporation to said receiver.

"January 28, 1889.　　MARSHALL J. CLARKE, Judge."

The petitioner avers that his detainment and imprisonment are illegal. He has committed no contempt of court ; he has purged himself of the alleged contempt by his affidavit heretofore filed in this case, a copy of which is attached. Even if he had possession, custody or control of any of the assets of defendant corporation, he cannot be compelled by the court to produce them, because to do so would be to furnish evidence that would tend to convict him of crime. Complainants in the bill filed against the defendant corporation, have sworn out warrants charging him with a crime in connection with these very assets, and if the court should compel him to produce the assets, it would be to furnish evidence to convict him of the crime charged against him in said warrants. He further shows that his imprisonment is illegal, in that it is imprisonment for debt. Since these warrants have been sworn out against him, he ought not to be further detained in prison, but said creditors ought to be left to their criminal prosecution ; otherwise, if convicted of said crime, he would be punished twice for the same offence ; wherefore he prays for a writ of *habeas corpus.*

Attached as an exhibit was the answer of Tolleson to the rule *nisi* served on him in the case stated, in which he swore that he had not then, nor did he have at the

time the rule *nisi* was served on him, any money, property or effects belonging to the Mercantile Banking Co. in his possession, custody or control. By amendment, petitioner alleged that he did not have possession, custody or control of the assets of the defendant corporation at the time he was ordered by the court to deliver them to the receiver when the receiver demanded them of him, and submits that the court will not compel him to discover what disposition he had made of them, as to do so would compel him to furnish evidence tending to convict him of a crime.

On the hearing, the two warrants referred to in the petition were read and considered by the court. They commanded the arrest of Tolleson under charges of larceny after trust and embezzlement, and were accompanied by the affidavits of Logan H. Roots, made April 18, 1889, averring that on December 18, 1888, in Fulton county, Tolleson committed the offences, for, being entrusted with the collection of a draft for $4,799.74 by the First National Bank of Little Rock, Ark., of which affiant was president, he did fraudulently collect the same and convert it to his own use, failing to account to the rightful owner, the bank, for the proceeds so collected, and fraudulently took, secreted and stole $4,799.74, the property of. the National Bank of Little Rock, Ark.

After argument, the court ordered that the writ be quashed, and that Tolleson be remanded to jail, there to remain until he complies with the order of January 28, 1889. He assigned this as erroneous.

B. H. Hill, R. J. Jordan, R. T. Dorsey and J. L. Hopkins & Sons, for plaintiff in error.

C. D. Hill, solicitor-general, Abbott & Smith and N. J. & T. A. Hammond, *contra.*

Bleckley, Chief Justice.

1. To come at once to the essence of this case, the

mistake, we conceive, of counsel for the plaintiff in error is, in not drawing the distinction between discovery and relief. No discovery of facts which would tend to criminate the party can be compelled. Story Eq. Pl. §§591 to 594. But as a measure of relief, to compel a party to part with property which he may have stolen is no violation of any privilege which the law gives. *Id.* §525. There certainly can be no privilege in any person to hold on to the fruits of crime as a means of preventing punishment. Here, according to the petition for *habeas corpus*, the plaintiff in error made no disclosure to the court, and so far as appears, was not called upon to make any prejudicial to his own innocence. He never did confess even to the possession of the assets in question; and taking the petition for *habeas corpus* and the recital in the order of commitment together, the court ordering the commitment must have become satisfied from other evidence that he had the possession of the assets, and could turn them over to the receiver. The order so to surrender them was not a measure of discovery but of relief. It was one of the steps in the cause tending to ultimate relief by final decree, and a means to make the same effective.

All the citations of authority by counsel going to show that no party or witness can be required to answer questions tending to criminate himself, we recognize as sound law, such as the cases of *Ex parte* Fisk, 113 U. S. 713, and Holman *v.* The Mayor, 34 Tex. 668. If the present case came within the letter or principle of such authorities, we should entertain no question of the right of the plaintiff in error to a discharge. But how will surrendering the assets of one bank tend to convict the party of embezzling or stealing the assets of another bank? Or supposing them to be the same assets and therefore the assets of both banks, how would his surrender of them tend any more to convict

him of embezzling or stealing than would his retention of them? It seems to us that a prompt surrender in obedience to an order of the proper court would be favorable to innocence rather than evidence of guilt. If his denial of possession and his delay to surrender would bear against him more hardly by reason of the surrender when finally made, this would not be the fault of the court in coercing a surrender, in spite of his denial and delay, but his own fault in denying and delaying. Is a court to stop short in obliging a contumacious party to comply with a lawful order touching relief, because such party has denied the fact on which the relief is founded, and delayed complying with the order? We think not. Suppose a man steals a horse and a statutory possessory warrant is sued out, can the thief keep the horse and refuse to produce it under the warrant, because to produce it would tend to criminate him? If so, an honest man would be on a worse footing in court than a thief. Is it not enough to protect the thief against furnishing evidence that he has the horse; but when evidence satisfactory to the court comes from another source, must the court forbear to give effect to it because the horse was stolen rather than taken under an honest claim of right? Surely no such discrimination in favor of criminal possession is made or can be made by the law of the land.

2. It certainly does not appear that there was any want of jurisdiction of the court over the subject-matter or the person, or any want of power to make the order for turning over the assets to the receiver, or the order for the imprisonment of the plaintiff in error until he should comply therewith. This being so, the validity of that order is to be taken for granted in this proceeding, and whether it was erroneous or not is not open to inquiry. Cooley Const. Lim. *347, 348; Sennott's case; 146 Mass. 489; s. c. 4 Am. St. Rep. 344, Church

Hab. Corp. §362 *et seq.; Ex parte* Parks, 93 U. S. 18; *Smith* v. *McLendon,* 59 *Ga.* 528.

. The order being valid, the imprisonment under it was not unlawful, and the remedy of the party to purge himself of contempt is not by *habeas corpus,* but by application to the court by whose order he was in confinement. If the contempt is to be purged without compliance with the order of that court, it is there and there alone that the purging can take place. Certainly it could not take place before Judge CLARKE sitting as a *habeas corpus* court, although he is judge also of the court by which the commitment was ordered. The two courts are entirely separate and distinct.

The order to remand the petitioner to the former custody being the only judgment that could be properly rendered on the petition, the return thereto and the evidence submitted, the inadvertence of quashing the writ also was of no consequence, and is not cause for reversing a judgment otherwise correct. As the case was fully heard before the writ was quashed, and as the petitioner was not entitled to his discharge, the mere quashing of the writ was a harmless error.

*Judgment affirmed.*