McCAMY, executor, *v.* CAVENDER, administrator.

1. A general agent in the transaction of his principal's business is not incompetent under the act of 1889 to testify to a particular transaction or communication, at which he was present but in which he took no part as agent or otherwise, between his principal and her debtor, since deceased, the case on trial being between her executor and the administrator of her debtor. As to transactions or communications between himself as agent and the debtor he is incompetent to testify.

2. Where at the time of making a partial payment for the amount of which a receipt was taken, the creditor most probably held three promissory notes of the same date given by the debtor for the

purchase money of a tract of land, the receipt being equally appli-- cable to each and all of the notes, and for a less sum than the amount due upon any one of them; and afterwards when a controversy arose as to the balance unpaid, the creditor produced two of the notes and the debtor one of them, none of them being credited with the amount covered by the receipt, the presumption is, in the absence of any explanatory evidence, that in taking up the note produced by the debtor the amount embraced in the receipt was treated as a payment upon that note.

July 10, 1893.

Complaint for land.   Before Judge Milner.   Whitfield superior court.   October term, 1892.

The executor of Bettie J. Walker sued the administrator of W. G. Cavender who had held the land under bond for title from plaintiff's testatrix, with part of the purchase money paid, the action being to enforce payment of the balance due.   The real question at issue was, whether a credit evidenced by a receipt held by the defendant for $80, made in November, 1884, should be taken as a payment on the note still in the hands of the plaintiff.   The plaintiff introduced two $100 notes, credited with $50 February, 1885, and $30 January, 1886. He then introduced the testimony of Seth M. Walker, a brother of Bettie J. Walker, which testimony was heard, and afterwards excluded on the ground that the witness was incompetent, W. G. Cavender being dead. The testimony referred to is as follows:   Cavender was owing Bettie J. Walker four notes for $100 each, and one for $70.   On several occasions he gave me money for her on these notes; sometimes he paid her himself.. In the summer of 1886 or 1887, I am not sure which year, he came to my office and said he wanted to see Bettie about the amount he owed her.   He and Jim Woods, now dead, and myself, went up to the house where my sister was.   Cavender and my sister exam-- ined the notes and calculated the amount then due on them.   I do not know that I heard them say how much was due on them; if I did I have forgotten it.   The

notes were then just as they are now, with the two credits above stated on them. Cavender never said anything about any other credits that ought to go on the notes. I have no interest in this case. The first I ever heard of any claim of a credit to go on this note was, when it was claimed that there was an $80 payment that had never been entered on the note. I think the receipt for the amount was shown me by Cavender, or his attorney I. E. Shumate. I could not then recall to mind anything about the payment of the money, nor can I do so now, though it is in my handwriting. This $80 specified in the receipt was paid to me for my sister, I think from the bill-head under which it was written, at the drug-store of Sloan & Co. When money was paid to me for my sister, I carried it to her and either she or I credited it on the notes. The two amounts $30 and $50 credited on the note, were paid to me, and I receipted therefor. One credit is in her handwriting and the other in mine. I have no distinct recollection when this $80 was paid, and apart from the receipt could not say that it was paid at all. The receipt is in my handwriting, and I know from that that it was paid to me. I do not know that it was or was not taken as part payment of the note taken up. For some time before Bettie Walker's death she was afflicted with epileptic fits which very much impaired her mind and memory, and for a year or two before she died she was almost wholly incapacitated for business. Her unfortunate condition was the reason I consented to take charge of her business. I may have carried this $80 to her, and I am confident that all the money that was ever paid to me for her I gave to her.

The plaintiff introduced a paper executed by Cavender on January 1, 1884, agreeing, in consideration of time given, to pay plaintiff's testatrix ten per cent. on three $100 notes given for the purchase money of the land. The defendant introduced a receipt for $80 to be cred-

ited on the notes given for the land in November, 1884,
signed Bettie J. Walker by S. M. Walker; also, one of
the $100 notes which had been taken up by him, and on
which no credit appeared ; also, the two receipts for $50
and $30, credits for which appeared on the notes intro-
duced by plaintiff. Defendant testified : W. G. Cav-
ender was my brother. He was sick and not able to
attend to business for some time before his death, and I
was looking after some of it for him. I went to see
Miss Bettie Walker about the balance due her on this
land; she showed me the notes just as they are now,
and I took a memorandum of it. I went to my brother
and showed him the memorandum I had taken, when
his wife got the receipt for $80 and gave it to me. My
brother died soon after this. I never mentioned the
matter afterwards to Miss Walker.

I. E. Shumate testified that he first called S. M.
Walker's attention to this receipt, and Walker seemed
utterly surprised; could not remember anything of it.

The judge, trying the case without a jury, ruled that
the $80 paid as shown by the receipt of 1884, should go
as a credit on the balance of the purchase money due
as shown by the notes. Plaintiff excepted.

R. J. & J. McCamy, for plaintiff.

McCutchen & Shumate, for defendant.

Bleckley, Chief Justice.

1. By the evidence act of 1889, an agent is disquali-
fied to testify in behalf of his principal as to any trans-
action or communication between himself and the person
with whom the transaction or communication was had,
when that person is dead and his legal representative is
a party to the suit on trial. But the act does not dis-
qualify the agent to testify to transactions and com-
munications between his principal and the deceased per-
son, in which the agent took no part. As to what they

did and said in his presence and hearing when he was doing nothing as agent, but was a mere passive spectator and listener, he is upon the footing of any other disinterested witness. Although Walker was the general agent of his sister, the plaintiff's testatrix, and in other instances had acted for her touching her business with Cavender, the defendant's intestate, he did not so act at the interview between them concerning which he testified. He was wholly passive. His sister acted and spake for herself, and Cavender did the same for himself. Neither by conduct nor speech did Walker represent her on that occasion; his functions as agent were in no manner exercised, but, for the time being, were completely dormant. This is fairly inferable from the tenor of his testimony. He was competent to prove what he saw and heard at that interview, and, so far as relevant, to show the limits of the conversation between his sister and Cavender, as, for instance, that Cavender said nothing of any other credit which should appear on the notes. He was incompetent to prove anything favorable to the plaintiff as to what payments were or were not made to him, or as to entering them on the notes or receipting for them, or as to anything he said to Cavender or Cavender said to him. The court erred in ruling out so much of the testimony as related to the fact and date of the interview and to what the witness then saw and heard, together with the further fact that on that occasion Cavender said nothing of any additional credit on the two notes which the parties to the interview had before them.

2. The two notes in suit were for $100.00 each. They were given for the purchase money of land. Both of these, and a third similar note, were outstanding on the first day of January, 1884, as appeared from a written instrument of that date, in which Cavender promised to pay the plaintiff's testatrix ten per cent. on three such

notes, in consideration of extending the time of pay-- ment. The inference is warranted that all three of the notes were mature at that date, though it does not appear to this court when any of them matured. Receipts produced by the defendant show that he made three payments, one of $80.00 in November, 1884, one of $50.00 in February, 1885, and one of $30.00 in January, 1886. The last two are credited upon the notes in suit, both on one or one on each. The first is not credited upon either of them, nor is it credited upon the third note, the latter note having been produced by the defendant at the trial. There was no evidence showing when or how this third note was paid off. The terms of the $80.00 receipt are equally applicable to each and every one of the three notes, the receipt mentioning notes, but not specifying any particular note. The amount embraced in that receipt is less than the principal of any one of the notes. As it was not applied to either of the two not paid off, the fair presumption is that it was applied in paying off the third. When a note is surrendered to the maker on being discharged by payment, there is no occasion to take up a receipt which has been given for a partial payment. In this instance, the balance may have been paid very soon after the receipt was given, possibly on the same day, and this may account for failure to enter it as a credit. The possession of the third note by the maker's administrator proves that it had been paid off, and the possession of the receipt as well as the note simply accounts for a partial payment which might as well be referred to that note as any other. So to refer it involves no inconsistency with the possession of the note or with any other fact in the case. There is nothing to indicate that this note was paid off before the receipt was given; the decided probability is, that all three of the notes were then outstanding. They certainly were on the first day of that year,

and nothing appears by which to fix the time when one of them was taken up.

We think the court erred in referring the $80.00 payment to the notes which were left out as unpaid, instead of to the one which was treated by the parties as paid and surrendered accordingly. In the absence of explanation, the surrender of that note was an application to it of the partial payment evidenced by the receipt.

*Judgment reversed.*