31759.   BEEBE *v.* SMITH, receiver, *et al.*

DECIDED JANUARY 22, 1948.

*Phillips & Johnson,* for plaintiff in error.

*Hoke Smith, Spalding, Sibley, Troutman & Kelley, James A. Branch Jr., Paul Webb, Solicitor-General,* contra.

GARDNER, J. ■ The application for contempt was served on the attorney of record for the defendant. It is the contention of the defendant that the service of the application of the receiver for contempt on the attorney of record for the defendant was contrary to law and ineffectual, and that any further proceedings in the contempt case were nugatory. This contention of the defendant is based on the provisions of the Code, § 81-213, which reads as follows: "Service of extraordinary process. When extraordinary process shall be granted, the clerk shall annex the same, together with the process, to the original petition, and also a copy thereof to the copy petition. Such petition and process shall be served only by a sheriff or his deputy, or a coroner, and must be personal." It is contended that, under the provisions of this Code section, the service should have been upon the defendant personally. On the other hand, the receiver contends that the Code (Ann. Supp.), § 24-3326, is controlling. That section reads as follows: "Rule 26. Service on attorney of record. The service of any notice, process, motion, rule or order of the

court on the attorney of record for any party to a cause pending in any court in this State shall be deemed sufficient service." We have given not only research, but much consideration to this question. We find that Code § 81-213 first appeared in the Code of 1863, and has been brought down through all the Codes since that time substantially as it appears in the present Code. In 1821 (Ga. L. 1821, p. 77), the General Assembly authorized the judges of the superior courts in annual convention to pass rules of practice for the superior courts. This authority continued until 1937 (Ga. L. 1937, p. 464), at which session the General Assembly reduced the power and authority of the judges of the superior courts to pass rules of practice, and authorized them in annual convention to make recommendations to the General Assembly as to rules of practice in the superior courts. At the session of 1937, when this authority was withdrawn by the legislature from the judges of the superior courts, several rules which the judges had theretofore passed were repealed. But practically all of the rules were retained, including Rule 26 as codified under the 1945 Supplement to the Code (Ann. Supp., § 24-3326). We have been unable to determine just when this rule was passed by the judges. It appeared first in the Code of 1895. As we view the question, it does not become necessary for us to determine whether Rule 26, as passed by the judges in convention, was prior or subsequent to the legislative act pertaining to the provisions of the Code, § 81-213. This is true for the reason that, in our view, there seems to be no conflict between Rule 26 and the provisions of the Code, § 81-213, as both appear in the present Code. If they can be construed in pari materia, to give the provisions of each section effect, it is our duty to do so. The provisions of Rule 26 apply only to service on the attorney of record after the defendant has been properly served and brought into court, and has employed an attorney to represent him. If the defendant had not been so served and required to appear in court, he would have no attorney of record; but since he was so served and required to appear, and did appear, through an attorney of record, then and then only, thence on may he be served by his attorney of record. Accordingly, the application for contempt in the instant case, having been served on the attorney of record, was a valid service

There are many other cogent reasons why the service of the defendant by serving his attorney of record is wise and practicable. We see no reason, though, to discuss the question further.

■ We have set forth the application for contempt and the amendments in the statement of the case, as well as the demurrer of the defendant to the application. We will not repeat them. The gist of the demurrers to the application of the receiver is to the effect that the application did not allege any facts sufficient to show contempt, for the reason that the allegations did not allege what assets the defendant had failed or refused to surrender to the receiver, and did not put the respondent on notice of what would be brought up on the trial. We are aware that on a demurrer the court must construe the pleadings most strongly against the pleader, and that as to specifications the petition must comply with the provisions of the Code, § 81-101. The heart of the application for contempt is that the defendant failed and refused to deliver up *or account for his assets,* to the receiver. It would seem that whether the defendant, under the allegations of the original petition and under the order of the court appointing the receiver, had delivered up and accounted for his assets, was peculiarly within his knowledge, and in such a situation the receiver would not be required to go further into detail. This court held in *Cedartown Cotton Co.* v. *Miles,* 2 *Ga. App.* 79, 81 (58 S. E. 289), as follows: "Many facts, especially those resting peculiarly within the knowledge of the opposite party, may be alleged in general terms." 49 C. J. p. 38, § 14, reads: "Facts which are, or which the law presumes to be, peculiarly within the knowledge of the other party may be alleged with less certainty and particularity than would otherwise be necessary, or may be alleged on information and belief; and they may even be omitted entirely." See also *South Georgia Power Co.* v. *Beavers,* 39 *Ga. App.* 374 (146 S. E. 924). Also, see Ingram, Georgia Pleading and Practice, p. 261, § 198, which is to the effect that a litigant is not required in his pleadings "to disclose the evidence by which he expects to establish the traversible facts alleged in the petition." In view of this record, the court did not err in overruling the demurrer to the application for contempt.

■ ■ On behalf of the defendant there are numerous assignments of error touching the evidence in the record upon

which the court adjudged the defendant in contempt. It might be well to state that the original petition for the appointment of a receiver alleged that he received in trust from the plaintiff paint to be shipped upon the defendant's order, invoices of which were attached to the petition. The shipments were made, a good many of them at least, to Beck and Gregg Hardware Company and Campbell Coal Company, from which purchasers' the defendant under a trust arrangement was to and did receive the payments from these two corporations. These amounts approximated $23,000, and the concerns issued checks to the defendant within approximately three weeks prior to the appointment of a receiver, and the checks were deposited by the defendant in his trade name. Also, it may be kept in mind that the plaintiff in the original petition alleged, and it was admitted throughout, that, after the receiver had been appointed while the defendant was in Florida, the receiver by order of the court took charge of the place of business and records, including deposit slips for the amounts so collected. Also, in the records which the receiver seized at the place of business of the defendant, was a check to the defendant for $1000 dated six days prior to the date the receiver was appointed, and a check to the defendant's wife for $5000 drawn out of the defendant's bank account. In the hearing for contempt the receiver was endeavoring to present evidence to show that Beck and Gregg Hardware Company and Campbell Coal Company had paid these large amounts to the defendant, and that the defendant had received and deposited them in his bank account. When representatives of Beck and Gregg Hardware Company and Campbell Coal Company were on the stand, the defendant objected to the introduction of the checks showing payment to him by these two concerns. These objections were based largely on the ground that the testimony of the agents who handled and directed the writing of these checks, by Beck and Gregg Hardware Company and Campbell Coal Company, to the defendant and the receiving of the checks, marked paid and canceled, to the account of the defendant, was hearsay. The evidence, however, showed that these agents supervised these transactions and accounts of the corporations and balanced these accounts with the accounts of their bankers. These checks showed that they were made

payable to the defendant, and indorsed by him. The deposit slips in the defendant's bank corresponded with those amounts. On this question, 6 Zollman on Banks and Banking, p. 147, § 3751, states: "The significance of the 'paid' stamp on the check, or the fact that the check itself is placed on the 'canceling fork,' should not be overestimated. It will not necessarily establish payment, though it warrants the presumption that the check has been paid." We might also in this connection call attention to the rule that payment of a note is presumed from possession of it by the maker after maturity. *McCamy* v. *Cavender*, 92 *Ga.* 254, 260 (18 S. E. 415). Therefore, the objections to the introduction of the checks of Beck and Gregg Hardware Company and Campbell Coal Company and the deposit slips of the defendant, which the receiver obtained through the defendant's records, are without merit.

■ There are assignments of error on the introduction of the check for $1000 which the defendant drew out of his account six days before the receiver was appointed, and the check for $5000 made to Mrs. Selma Beebe. These checks were found in the effects of the defendant and were marked paid. In our opinion the admission of all these documents was proper and the court did not err for any reason assigned in admitting them for consideration.

■ As will be noted in the history of the case set out in the statement of facts, the defendant in his sworn answer to the original petition wherein a receiver was appointed, denied the material allegations of the petition and further answered as therein shown. This answer was offered in evidence by the receiver. The defendant objected to its admission on the ground that it was illegal and incompetent, for that its introduction might be used later in a criminal action which was then pending against the defendant for larceny after trust concerning the same subject-matter. It is specifically pointed out that the court erred in admitting the paragraph of the defendant's answer to the effect that he was insolvent, on the ground that such evidence was irrelevant and immaterial and contrary to law. We will discuss that subparagraph with other errors assigned concerning questions which were propounded to the defendant while he was on the stand. As we have heretofore shown, the court required the

defendant to answer certain questions over the objections that the answers would tend to incriminate him. The defendant was required to answer as to how much money he had on the date of the trial. He was asked if his trade creditors were indebted to him, and was asked certain other questions concerning his business transactions just prior to the appointment of the receiver and thereafter. The court required the defendant to answer as to the cash he had. He stated $104. The defendant refused to answer other questions pertaining to his business transactions on the ground that he did not have his records—that they had been taken charge of by the receiver. The records were in court, however, and they were tendered to the defendant. He stated that he could not examine them in two minutes. He did not ask the court for any additional time in which to examine them.

We will discuss next the assignments of error on the admission of the answer of the defendant in the main case, and the assignments on requiring the defendant to answer certain questions over his objection that the answers would tend to incriminate him. In *Tolleson* v. *Greene*, 83 *Ga.* 499 (10 S. E. 120), Tolleson had been jailed for refusing to deliver assets to a receiver. Tolleson brought a petition for habeas corpus, in which he alleged: "Even if he had possession, custody, or control of any of the assets of defendant corporation, he can not be compelled by the court to produce them, because to do so would be to furnish evidence that would tend to convict him of crime. Complainants in the bill filed against the defendant corporation, have sworn out warrants charging him with a crime in connection with these very assets, and if the court should compel him to produce the assets, it would be to furnish evidence to convict him of the crime charged against him in said warrants. He further shows that his imprisonment is illegal, in that it is imprisonment for debt. Since these warrants have been sworn out against him, he ought not to be further detained in prison, but said creditors ought to be left to their criminal prosecution; otherwise, if convicted of said crime, he would be punished twice for the same offense." The trial court dismissed the writ. The Supreme Court made this comment in affirming the judgment of dismissal: "To come at once to the essence of this case, the mistake, we conceive, of counsel for the plaintiff in error, is in not

drawing the distinction between discovery and relief. No discovery of facts which would tend to criminate the party can be compelled. Story Eq. Pl. §§ 591 to 594. But as a measure of relief, to compel a party to part with property which he may have stolen is no violation of any privilege which the law gives. Id. § 525. There certainly can be no privilege in any person to hold on to the fruits of crime as a means of preventing punishment. Here, according to the petition for habeas corpus, the plaintiff in error made no disclosure to the court, and so far as appears, was not called upon to make any prejudicial to his own innocence. He never did confess even to the possession of the assets in question; and taking the petition for habeas corpus and the recital in the order of commitment together, the court ordering the commitment must have become satisfied from other evidence that he had the possession of the assets, and could turn them over to the receiver. The order so to surrender them was not a measure of discovery but of relief. It was one of the steps in the cause tending to ultimate relief by final decree, and a means to make the same effective.

"All the citations of authority by counsel going to show that no party or witness can be required to answer questions tending to criminate himself, we recognize as sound law, such as the cases of Ex parte Fisk, 113 U. S. 713 [5 Sup. Ct. 724, 28 L. ed. 1117], and Holman v. The Mayor, 34 Tex. 668. If the present case came within the letter or principle of such authorities, we should entertain no question of the right of the plaintiff in error to a discharge. But how will surrendering the assets of one bank tend to convict the party of embezzling or stealing the assets of another bank?. Or supposing them to be the same assets and therefore the assets of both banks, how would his surrender of them tend any more to convict him of embezzling or stealing than would his retention of them? It seems to us that a prompt surrender in obedience to an order of the proper court would be favorable to innocence rather than evidence of guilt. If his denial of possession and his delay to surrender would bear against him more hardly by reason of the surrender when finally made, this would not be the fault of the court in coercing a surrender, in spite of his denial and delay, but his own fault in denying and delaying. Is a court to stop short in obliging a

contumacious party to comply with a lawful order touching relief, because such party has denied the fact on which the relief is founded, and delayed complying with the order? We think not. Suppose a man steals a horse and a statutory possessory-warrant is sued out, can the thief keep the horse and refuse to produce it under the warrant, because to produce it would tend to criminate him? If so, an honest man would be on a worse footing in court than a thief. Is it not enough to protect the thief against furnishing evidence that he has the horse; but when evidence satisfactory to the court comes from another source, must the court forbear to give effect to it because the horse was stolen rather than taken under an honest claim of right? Surely no such discrimination in favor of criminal possession is made or can be made by the law of the land."

The record in the instant case reveals that the defendant made no effort whatsoever to account for the large amount of money which he collected within a few weeks prior to the appointment of the receiver, although the receiver, as admitted by the defendant through his attorney, tried again and again to get the defendant to do so before the application for contempt was filed. In this connection counsel for the defendant relies on the case of *Loewenherz* v. *Merchants &c. Bank of Columbus*, 144 *Ga.* 556 (5) (87 S. E. 778, Ann. Cas. 1917 E., 877). The facts in that case differentiate it from those in the instant case, as will be readily seen, we think upon comparison, in the light of the decision in the *Tolleson* case, supra.

■ We come next to discuss the $5000 which Mrs. Selma Beebe received out of the funds of the defendant's business in question eight days before the receiver was appointed. Counsel for the defendant contends that there was no evidence that the payee was the wife of the defendant. From reading the record we are convinced that the trial judge was authorized to infer that Mrs. Selma Beebe was the wife of the defendant. Indeed, able counsel for the defendant during the taking of the testimony stated that they were prepared to admit that the defendant made payments to his wife, but that he did not know how much. But counsel for the defendant contends that, even if Mrs. Selma Beebe was the wife of the defendant, she was a feme sole as to her separate estate under the Code, § 53-503, and without a

jury trial finding the transaction to be fraudulent, the judge was without authority to require the defendant to deliver up funds which had been transferred to his wife. It seems that under the facts of this case according to the evidence regarding the time of the payment of this $5000 to the defendant's wife, and under the circumstances surrounding it, the burden shifted to the defendant, even in this contempt proceeding, to show that the paying of this $5000 to his wife was a bona fide transaction and not a fraudulent one. Code, § 53-505. The defendant could at least have co-operated with the court, if he could do so, to show that this transaction was not a fraudulent one but was based upon a valuable consideration. It is contended that the defendant was not sufficiently informed, as to the evidence which was produced against him concerning his assets, to have his wife present. We are quite sure that, if the defendant had requested sufficient time, the court would have granted him such time as was necessary to procure his wife to explain the bona fides of this transaction, if she could. The defendant made no such request, but throughout all the transaction closed his lips like a clam until the court did, in a few instances, prize them apart, and then only to obtain a very meager account, whispering, as it were, concerning the business transactions of the defendant. Insofar as the money which the court requested the defendant to deposit, $6000 to purge himself of contempt, this did not finally determine whether the $5000 transaction was a bona fide one as between the husband and wife. This question, of course, will be determined finally by a jury in the trial of the main case. But under the evidence as it developed at the hearing for contempt, the judge was authorized to find that the $5000 comprised assets of the defendant for which he should have accounted in the contempt hearing.

The court did not err for any of the reasons assigned in each of the subdivisions of this division of the opinion.

■ As to the general grounds, the evidence amply authorized the trial court to adjudge the defendant in contempt for not turning over his assets to the receiver, or in lieu thereof to account for them. In *Cabot* v. *Yarborough*, 27 *Ga.* 476, 478, the court said: "The question, whether there is a contempt of a court, and the question whether, if there is one, it ought to be

punished or ought to be excused, and other questions, as to contempt, are questions for the discretion and judgment of that court. And there can be little danger that a court will fail in the duty of having itself sufficiently respected. Whatever decision then, it comes to, on such questions, ought to be final, at least, unless there is something in the decision to show a most flagrant abuse of the discretion." See also *Remley* v. *DeWall*, 41 *Ga.* 466 (5) ; *Thweatt* v. *Gammell*, 56 *Ga.* 98; *Reid* v. *McRae*, 190 *Ga.* 323, 334 (9 S. E. 2d, 176).

The court did not err in adjudging the defendant in contempt for any of the reasons assigned.

*Judgment affirmed. MacIntyre, P. J., and Townsend, J., concur.*