## BYRD PRINTING CO. *v.* WHITAKER PAPER CO.

1. A bank check is a contract in writing, by the execution and delivery of which the drawer contracts with the payee that the bank will, on presentation, pay to him or his order the amount designated. It is not "merely a request upon a third party to pay." Where the payee of such check brings suit thereon, it is not necessary for the petition to allege the consideration for which the check was given, or to set forth any further showing to maintain the action than that the plaintiff is named as payee in the check, and that it has been presented for payment and the same refused.

2. Where pending a controversy between the parties, as to matters growing out of a prior contract between them, they enter into a new contract of accord and satisfaction, founded on a new consideration, the latter contract operates as a satisfaction of the former one.

(a) After such latter contract has been entered into, a mere breach of it, or the declared intention of one of the parties not to abide by it, will not of itself operate to fix the status of the parties the same as it was prior to the making of the latter contract.

3. Where a contract was made by which one party was to sell certain personalty and deliver a portion of it at one time, and another portion at a later date, if such party committed an anticipatory breach of the contract by announcing his intention not to comply therewith, but the other party did not proceed on the basis of claiming such anticipatory breach but waited until the first party brought an action on such contract, and then, after the time for performance had elapsed, claimed damages on account of a breach of the contract in not delivering the articles sold, such breaches would date from the times when the deliveries should have been made respectively, and not from the time of such anticipatory declaration of intention.

FEBRUARY 14, 1911. ON REHEARING, MARCH 4, 1911.

Complaint. Before Judge Pendleton. Fulton superior court. October 2, 1909.

*Moore & Pomeroy,* for plaintiff in error. *C. P. Goree,* contra.

FISH, C. J. On November 15, 1906, the Byrd Printing Company of Atlanta ordered a lot of paper of a designated kind from the Whitaker Paper Company of Cincinnati. The paper was shipped on December 31, 1906, and reached Atlanta in the early part of January, 1907. The Byrd Company claimed that the

paper shipped was of a quality inferior to that ordered, was in a damaged condition, and not merchantable; and refused to pay for it until a satisfactory allowance was made for the damages claimed. The differences between the Byrd Company and the Whitaker Company were 'not at once adjusted.    On January 26, 1907, the Byrd Company ordered from the Whitaker Company an additional 200 reams of paper, and on February 11, 1907, ordered two-car loads of paper; but the Whitaker Company refused to agree to fill these orders until the first car-load of paper should have been paid for.    There was considerable correspondence between the parties, in the course of which the Whitaker Company notified the Byrd Company that it would send a representative, one Reid, to Atlanta, to adjust the differences then existing.    The record leaves no room to doubt that the Byrd Company knew that Reid was the agent of the Whitaker Company, with full power to act for it in the adjustment of the matter in controversy.    In its letters to the Whitaker Company it urged that Reid be sent to Atlanta at the earliest possible time, so that matters might be adjusted and so that they might be enabled to get additional supplies of paper without further delay.

Reid went to Atlanta and consulted with the Byrd Company as to the matters in controversy; and on February 19, 1907, an agreement was executed between the Byrd Company through its president, and the Whitaker Company through Reid, the substantial parts of which were as follows: "Party of the first part [the Whitaker Company], for and in consideration of the sum of $1,351.68, the receipt whereof is hereby acknowledged, agrees to relinquish all claims for any further sum to be paid on a car of paper invoiced to party of the second part [the Byrd Company] on December 31, 1906.    In consideration of this settlement, the said party of the second part agrees to carefully sort and preserve all waste paper found in the balance of the car unused, and to sell same to said party of the first part, f. o. b. Atlanta, at the rate of 50 cts. (fifty) per hundred pounds.    Said party of the first part agrees to fill the orders for two cars of S. & S. C. book paper given them by said party of the second part, at 3½ cts. per pound, f. o. b. Cincinnati, with a guaranteed freight rate of 41cts. per hundred lbs., said paper to come up to sample furnished party of the second

part in every respect, and first car to be shipped on or about March 20, 1907."

Contemporaneously with the execution of this agreement, the Byrd Company gave to Reid, representing the Whitaker Company, its check for $1,351.68, and the check and contract were sent by Reid to the Whitaker Company in Cincinnati. Two days later, Reid received from the Whitaker Company a telegram reading as follows: "Agreement with Byrd must be revised terms in agreement omitted our terms to Byrd sight draft sufficient cash in advance to pay freight both ways also omit guarantee on freight rate." Reid testified, in substance, that upon receipt of this telegram he exhibited it to Byrd, the president of the Byrd Printing Company, and endeavored to induce him to agree to a modification of the contract previously entered into on February 19, 1907; but that Byrd declined to agree to make any change therein; whereupon Reid informed Byrd that the Whitaker Paper Company would carry out the contract as written. Byrd in his testimony denied that Reid told him that it would do so. During this conference between Reid and Byrd in reference to the telegram, the Byrd Printing Company conmmunicated with the bank upon which the check sued on was drawn, and which the Byrd Printing Company had given as part of the consideration of the contract of February 19, 1907, and had payment of the check stopped. When the check was presented for payment, it was refused. The Whitaker Paper Company therefore brought suit on the check. The defendant filed a demurrer to the petition, which was overruled. It also answered. On the trial the jury found a verdict for the plaintiff for $1,111.97, and the defendant's motion for a new trial was overruled. The defendant excepted, assigning error upon the refusal of a new trial and upon exceptions pendente lite to the overruling of the demurrer.

1. The demurrer to the petition was general and special. The special grounds were, that it did not appear that the plaintiff had any right to maintain its action on the instrument sued on; that it did not appear that the instrument was founded upon any consideration, or upon a sufficient consideration; that it appeared that the instrument was merely a request upon a third party to pay to the plaintiff a sum of money, and not a promise to pay the plaintiff

any sum; and that it did not appear that the indorsements and notations on the check ("Payment stopped by drawer," signed by the paying teller of the bank, and "Noted and protested for non-payment," signed by a notary, both dated prior to the suit), "were placed thereon with the knowledge or consent of the defendant," or "that the check was received as payment for an antecedent debt."

There is no merit in any of the grounds of demurrer. Certainly the petition stated a cause of action, as against a general demurrer. A check is a contract, and not a "mere request upon a third party to pay money." *Haynes* v. *Wesley,* 112 *Ga.* 668 (37 S. E. 990, 81 Am. St. R. 72). Like a promissory note, it imports a consideration, and none need be alleged in a petition in an action to collect the amount due thereon. Inasmuch as the check was made payable to the Whitaker Company, and the petition alleged that the check had been presented for payment and the same refused, no further showing of its right to sue thereon was necessary.

2. The written contract entered into between the Whitaker Paper Company and the Byrd Printing Company, of February 19, 1907, was not a mere agreement of accord which would have become a satisfaction of the former matters in the controversy between the parties, upon the performance of the agreement; but was itself a complete accord and satisfaction. This contract included not only new terms, but a new consideration. Civil Code (1910), § 4326. The original controversy between the parties both as to the car of paper that had been shipped by the plaintiff and received by the defendant, and as to the two cars ordered by the defendant but not shipped by the plaintiff, was absolutely extinguished by the last contract entered into on February 19, 1907; and the respective rights of the parties were thereafter dependent upon the terms of that contract, which the uncontradicted evidence showed the plaintiff's agent was authorized to execute in its behalf.

There was evidence tending to show a breach of this contract on the part of the plaintiff, but there was no evidence whatever which would authorize the jury to find that this contract of accord and satisfaction was ever mutually rescinded and the parties restored to the status which was occupied by them before such contract was made. The mere breach of the contract or a declared intention of one of the parties not to abide by it, would not of itself operate to restore the status of the parties as it existed prior to the execution

of the contract. The court, therefore, did not err in not submitting to the jury the question of whether there was such a rescission, nor in refusing to give instructions as to the defendant's right to set up, by way of defense, a claim for damages growing out of the original transaction, and prior to the execution of the contract of accord and satisfaction.

3. If there was any anticipatory breach of the contract of accord and satisfaction on the part of the plaintiff, the defendant did not at the time of such breach elect to proceed for damages caused thereby, but waited until suit was brought against it on the check which it had given to the plaintiff, and when the time of performance of the contract had passed, and then set up the breach of such contract in its plea. If the defendant were entitled to recover, the recovery would be for the breaches occurring at the time when such performance should have been made, and not as dating from some alleged anticipatory announcement. The plaintiff, by suing on the check given as a part of the contract of accord and satisfaction, not only estops itself from denying the authority of its agent, Reid, to make it, but is also proceeding to enforce such contract, and is therefore not continuously repudiating it, if it ever did so at all. *Smith* v. *Georgia Loan etc. Co.*, 113 *Ga.* 975 (39 S. E. 410). *Judgment affirmed. All the Justices concur.*

Chief Justice Fish and Associate Justice Beck were prevented by sickness from taking part in certain cases herein reported, where their absences are noted.

In 134 *Ga.* 654, at the end of the opinion in Hatcher *v.* Equitable Life Assurance Society, the word *reversed* should be *affirmed.*