38540, 38568.   PIEDMONT LIFE INSURANCE COMPANY v. BELL.

DECIDED FEBRUARY 14, 1961—
REHEARING DENIED MARCH 3, 1961.

*Robert S. Wiggins,* for plaintiff in error.

*Reeves & Collier, Rex. T. Reeves, Merrell H. Collier,* contra.

BELL, Judge. ■ The defendant contends that the trial court erred in striking its defensive plea of the statute of frauds from the answer as pleaded in this language: "21. Further answering said petition, and by way of special plea, the defendant avers that the alleged cause of action in the plaintiff's petition rests upon an agreement in parol; that said alleged agreement could not be performed within one year; and that, therefore, said cause of action is barred by the statute of frauds."

In *McDougald v. Banks,* 13 Ga. 451, the Supreme Court held that it is necessary to plead the appropriate section of the statute of frauds unless the pleadings of the plaintiff show that his case is not within the exceptions to the statute. Numerous cases since have stated or held that the statute of frauds must be pleaded or there must be a special plea to that effect or some similar language. See *Hotel Candler, Inc. v. Candler,* 198 Ga. 339, 346 (31 S. E. 2d 693); *Johnson v. Latimer,* 71 Ga. 470.

In *Wolf v. Arant,* 88 Ga. App. 568, 571 (77 S. E. 2d 116), the defendant interposed a general demurrer to the petition which in essence asserted that the promise or contract alleged in the petition was never reduced to writing "within the meaning of the statute for the prevention of frauds, as codified in paragraphs 20-401 et seq. of the Code of Georgia." The demurrer, ap-

parently treated as a special demurrer, was held to be without merit in that it was incomplete and did not specify which provision of the statute of frauds required the contract to be in writing. In any event, the *Wolf* case is distinguishable from this one, since the plea here of the statute of frauds was made in the defendant's answer and not by demurrer.

From these cases, and numerous others, it appears that, although there is no statutory requirement for it, the statute of frauds must be raised by an affirmative plea, which must set forth the section of the statute relied upon, or there must be a timely motion for nonsuit, or objection to the testimony must be made so as to invoke a ruling in the trial court on the statute.

While it is to be noted that the paragraph of the defendant's answer under consideration which pleads the statute of frauds does not plead the section of the statute relied upon verbatim, it does by indirection clearly point to the requirement of the statute of frauds relating to contracts not to be performed in one year. Further, the plea in the answer which raises the statute of frauds refers to the allegation that the contract was oral, that it could not be performed within one year, and was, therefore, within the statute.

While it appears from the cases that the defendant must raise the defense of the statute of frauds by an affirmative plea, there are no cases holding that the plea may not be made in the answer. On the contrary, there is authority that a plea in bar, of which the statute of frauds is one, may be contained in the answer. *Galloway v. Merrill,* 213 Ga. 633, 634 (3) (100 S. E. 2d 443); and see *Mendel v. Miller & Sons,* 134 Ga. 610 (1) (68 S. E. 430).

Under these circumstances we are constrained to accept as the just view that the defendant here has the right to have the plea of the statute of frauds remain in the case, even though there is an allegation in the petition which, if proved, would take the case out of the statute, for if there is a failure to prove the allegation, the defendant then has the right to judgment because of the statute. Failure to plead the statute is to waive it, since it is a plea in the nature of personal privilege, of which one can avail himself or not as one wishes. *Draper-Moore & Co. v. Macon*

*Dry Goods Co.,* 103 Ga. 661 (30 S. E. 566, 68 Am. St. Rep. 136) ; *Armour v. Ross,* 110 Ga. 403, 413 (35 S. E. 787) ; 3 Williston on Contracts, 3d ed., 718, § 527.

Accordingly, we think that this is a sufficient plea to raise the issue, and the trial court erred in sustaining the plaintiff's demurrer and striking the paragraph of the defendant's answer which asserted the defense.

■ The company urges strenuously that the oral contract alleged in the petition was wholly unilateral in character for the reason that it imposed no obligation upon the plaintiff now seeking to enforce it, and since there was no mutuality of obligation it was void and unenforceable and its general demurrer should have been sustained, not overruled, as the trial court did in this case.

The petition alleges that the company orally agreed with the plaintiff to employ his services to solicit subscriptions for the initial authorized capital stock, and that the plaintiff orally agreed with the defendant company to furnish the plaintiff's services and to devote his full time to soliciting subscriptions for the purchase of the shares of stock at the designated price until he had obtained subscriptions for all of the remaining shares of the initial stock offering, and that it was agreed between them that the plaintiff would perform the services of obtaining the subscriptions in a satisfactory manner within a period of two years from November 22, 1946. The petition further alleges that, as part compensation for the services the plaintiff agreed to render, he would receive 10% of the purchase price of each share payable as and when the subscription was received by the company; that for the remainder of the plaintiff's compensation upon his obtaining subscriptions for all of the initial shares, he would have the complete and exclusive right from that time until January 1, 1957, to solicit subscriptions for the purchase of and to sell each share of the remaining 90,000 shares of capital stock which the defendant was authorized by its charter to issue, at a price of $20 per share or at such price per share as might be fixed by the defendant as the value per share; that the plaintiff would have the right to employ others in assisting him in selling this remaining stock; that the plaintiff would receive as compensation

10% of the subscription purchase price of each of the remaining shares payable as the subscriptions were received by the defendant; that during the period that the plaintiff had this right, the defendant would not sell or in any way transfer or dispose of any of the stock unless for each share sold or otherwise disposed of it first paid the plaintiff 10% of the amount of money fixed by the defendant as the sales price or the value of each share.

The petition further charged that the plaintiff fully performed the agreement to sell the initial shares of capital stock, that the defendant accepted the performance, received subscriptions therefor, and paid the plaintiff the 10% of the purchase price named in the subscription. The petition also alleges that the defendant carried out and performed the other part of the agreement relating to the remaining shares of authorized capital stock until 1950 by according the plaintiff the complete and exclusive right to solicit subscriptions for the purchase and sale during the calendar years 1947 to and including January, 1950. During this period the plaintiff alleges that he sold approximately 12,750 additional shares of the capital stock of the defendant under the agreement and received payment as stipulated in the amount of 10% of the subscription price. The petition charges prevention by the defendant of full performance by the plaintiff in that in January, 1950, the defendant informed the plaintiff that after February 1, 1950, it would not permit him to solicit subscriptions for or to sell any further shares of its capital stock. It is further alleged that the plaintiff stood ready at all times to devote his full time to soliciting subscriptions for and selling the shares of stock, but that the company has not permitted the plaintiff to do so, and that the defendant has from time to time sold varying amounts of stock in breach of the agreement, and that the defendant, therefore, is liable for commissions as provided in the agreement.

Counsel for both parties have presented persuasive argument that the alleged contract was unilateral and unenforceable, and bilateral and mutually binding, respectively. With the benefit of this assistance, we construe the defendant's offer to the plaintiff at its inception to have been unilateral, the offer having been that if the plaintiff should dispose of the initial stock issued within

the stipulated time at the price fixed, the defendant would then grant the exclusive right to the plaintiff to dispose of the remaining 90,000 shares of the capital stock authorized in the original charter at $20 per share, or at such other price as might be fixed, and that the plaintiff would be entitled to have the sole and exclusive right to dispose of the remaining shares. Further, at the inception of this offer there was no mutuality of obligation. However, upon the plaintiff's performing that part of the consideration requested in the offer, namely the sale of the initial stock offered, there arose a contract between the parties by which the defendant became obligated to allow the plaintiff the sole and exclusive right to dispose of the remaining 90,000 shares as agreed, provided he succeeded in doing so at the prices fixed and within the time set for full performance. The defendant was then bound to allow the plaintiff the rights fixed in the agreement. The plaintiff, on the other hand, was then bound to exercise reasonable diligence in performing the remainder of the contract.

This type of contract falls within the rules of § 45 of the Restatement of Contracts, (p. 53) which is captioned, "Revocation of Offer for Unilateral Contract; Effect of Part Performance or Tender." This reads, "If an offer for a unilateral contract is made, and part of the consideration requested in the offer is given or tendered by the offeree in response thereto, the offeror is bound by a contract, the duty of immediate performance of which is conditional on the full consideration being given or tendered within the time stated in the offer, or, if no time is stated therein, within a reasonable time." Comment b under this section points out that there can be no actionable duty on the part of the offeror until he has received all that he has demanded, or until the condition is excused by his own prevention of performance by refusing a tender, but he may become bound at an earlier date. The main offer includes a subsidiary promise necessarily implied that if part of the requested performance is given, the offeror will not revoke his offer, and that if tender is made, it will be accepted. Part performance or tender may thus furnish consideration for the subsidiary promises.

This principle of the Restatement finds some support in *Code* § 20-402, which lists the exceptions to the statute of frauds,

the third exception being "Where there has been such part performance of the contract as would render it a fraud of the party refusing to comply, if the court did not compel a performance." As the oral contract is alleged in the petition, the bargain of the parties was that the defendant agreed that if the plaintiff sold the initial stock issued at the price stipulated within the time limit, the plaintiff would thereby have the exclusive right to dispose of the remaining shares. The performance by the plaintiff of the part consideration requested in the offer was allegedly accepted by the defendant, whereupon under the principles stated in § 45 of the Restatement of the Law of Contracts, the defendant became bound on its side for the remaining part of the agreement, provided the plaintiff performed in the manner stipulated in the contract.

This premise appears to have found acceptance in *Brown v. Bowman*, 119 Ga. 153 (46 S.E. 410), where the Supreme Court held that though a contract may be nudum pactum when made, because the promisee is not bound, it becomes binding when he subsequently furnishes the consideration contemplated, by doing what he was expected to do. In reaching this conclusion, the court cited with approval Bishop on Contracts, § 87, which states, "A contract is often such that, until something is done under it, the consideration is imperfect, yet a partial performance, or a complete performance on one side, supplies the defect. · . . . " The Supreme Court went on to point out that the test of mutuality is to be applied not as of the time when the promises are made, but as of the time when one or the other is sought to be enforced. A promise may be unenforceable for want of mutuality when made, and yet the promisee may render it valid and binding by supplying a consideration on his part before the promise is withdrawn.

Admittedly, in the *Brown* case the contract was in writing, while here the contract is oral. However, under *Code* § 20-402 (3) part performance will take the contract out of the statute of frauds where the part performance is such as to render it a fraud of the party refusing to comply. Here we feel there has been such part performance as to bring the alleged oral contract within that exception. See *Tanner v. Campbell*, 182 Ga. 121 (184 S. E. 705) where the contract was oral.

The defendant, in arguing that the contract was unilateral and therefore unenforceable because of the lack of mutuality of obligation, cites *Pepsi-Cola Co. v. Wright*, 187 Ga. 723 (2 S. E. 2d 73); *Foster v. Mack*, 180 Ga. 418 (179 S. E. 97); and *Code* § 20-304, together with a considerable number of cases decided thereunder. In *Alexis, Inc. v. Werbell*, 209 Ga. 665, 671 (75 S. E. 2d 168), the *Pepsi-Cola* case and others cited were explained as being based upon contracts unenforceable because they were too indefinite. Further, it has been held in cases cited under *Code* § 20-304 that the promise in each instance must be sufficiently definite both as to time and subject matter. In the present case, the time and performance of the subject matter of the alleged contract were sufficiently definite to be capable of enforcement.

Accordingly, as to the petition we think that neither the statute of frauds nor the doctrine of mutuality of obligation stands as a bar to this action.

■ The defendant's third general demurrer to the plaintiff's petition is based on the ground that the same shows on its face that the alleged cause of action arose more than four years prior to the filing of the suit, and that since the cause of action rests on an oral agreement, the statute of limitation ran on the entire cause, because of *Code* § 3-706, which provides that all actions for the breach of any contract not under the hand of the party sought to be charged shall be brought within four years after the right of action shall have accrued. Since the contract is admittedly oral, the four-year statute of limitation applies, and the question thus arises as to when the cause of action arose. The defendant insists that the cause, if any, arose in January, 1950, when the defendant notified the plaintiff that after February 1, 1950, he would not be permitted to solicit any further subscriptions nor to sell any more shares of the company's capital stock, and since the present action was not filed until September 18, 1959, it is thus barred by the statute of limitation.

The plaintiff's theory is that under the doctrine of anticipatory breach, when the plaintiff was notified that the defendant would not further permit any sales of the stock by him, there was only a tender of a breach which did not give a rise to a right of action

unless and until accepted by the plaintiff, and since the plaintiff did not accept the breach, but, on the contrary, stood ready to perform throughout the term of his exclusive sales rights, he could thus wait until the ultimate time set for performance and then bring the action, as was done in this case, and since the final expiration of his rights under the alleged contract did not occur until January 1, 1957, the action was brought seasonably.

In *Gilleland v. Welch*, 199 Ga. 341 (34 S. E. 2d 517) the Supreme Court held that the vendee there had the option of two remedies, to either of which he might resort: (1) to accept the anticipatory breach as tendered and sue at once for damages; or (2) to treat the contract as remaining in force for the purpose for which it was made *until the time set for its performance,* and then sue for specific performance. The court further held that, since the vendee had elected not to choose the first of these remedies, but brought suit instead for specific performance, under the exercise of that option the action was prematurely brought, since the action was brought before performance was due.

In *Beck v. Thompson & Taylor Spice Co.*, 108 Ga. 242 (33 S. E. 894), the Supreme Court stated, "It is a well-settled principle of law, that where a contract of employment is broken by one of the parties, the other party acquires or may acquire three distinct rights: 1st. He may bring an action immediately to recover for any special injury which he may have sustained in consequence of the breach of the contract. 2d. He may wait until the termination of the period for which he was employed, and sue upon the contract and recover his whole wages. 3d. He may treat the contract as rescinded, and may immediately sue on a quantum meruit for the work and labor he actually performed."

The majority rule in the United States appears to agree in effect with the Georgia law as expressed by our Supreme Court, in that an anticipatory repudiation of a bilateral contract of mutually dependent promises gives rise to an election on the part of the other party: (1) to rescind the contract altogether and, if any performance has already been rendered by the injured party, to recover its value on principles of quasi-contract; (2) to elect to treat the repudiation as a breach . . . ; or (3) to

await the time for performance of the contract and then bring suit after the time has arrived. 5 Williston on Contracts, rev. ed., § 1337. Restatement of Contracts, §§ 306, 318, 336, 409, 410.

As to when the statute of limitation begins to run in such cases, there are different rules generally recognized, based on whether the contract is divisible or entire. 3 Williston on Contracts, rev. ed., § 861, and see Waybright v. Meek, 90 Cal. App. 13 (265 P. 370). If the contract is found to be strictly divisible, the statute will run separately as to each payment or performance when it becomes due, either as an independent obligation or as a return for an instalment of the counter-performance. 6 Williston on Contracts, rev. ed., § 2027. Williston defines a divisible contract as one under which the whole performance is divided into two sets of partial performances, each part of each set being the agreed exchange for a corresponding part of the set of performances to be rendered by the other promisor. 3 Williston on Contracts, rev. ed., § 860A. There appears to be considerable difficulty in determining whether a contract of the type involved in the present action is to be held divisible or entire. Thus, contracts of service for a specified term are held severable when the wages or salary can be construed as payable at specified shorter periods. 3 Williston on Contracts, rev. ed. § 862, at p. 2420; Welcome Wagon, Inc. v. Haschert, 125 Ind. App. 503 (127 N. E. 2d 103).

*Code* § 20-112 provides that a contract may be either entire or severable. In the former the whole contract stands or falls together; in the latter, the failure of a distinct part does not void the remainder. The character of the contract in such case is determined by the intention of the parties. Numerous cases have stated that the criterion for determining whether the contract is entire or severable under this rule is to be found in the question of whether the whole quantity, service, or thing, all as a whole, is of the essence of the contract, and if it appear that the contract was to take the whole or none, then the contract would be entire, but, on the other hand, if the quantity, service, or thing is to be accepted by successive performances, then the contract may properly be held to be severable. *Broxton v. Nelson,* 103 Ga. 327 (30 S. E. 38); *Dolan v. Lifsey,* 19 Ga. App. 518, 519

(91 S. E. 913) ; *Glass v. Grant,* 46 Ga. App. 327 (167 S. E. 727). If the contract is found to be severable, an action will lie for each breach. *Code* § 20-1401.

Construing the allegations of the petition in the present case, we conclude that it was the intention of the parties under the contract as alleged that the plaintiff would receive payment as the shares of stock were sold, after the initial issue had been sold, and that for such shares as were sold he would receive payment regardless of whether he sold the remainder or not. Since this is so, we find that the contract as alleged was divisible, and that any action for breaches by the defendant by its sales out of the authorized capital stock, which were more than four years prior to the filing of this petition, was barred by the statute of limitation, but that as to any sales made by the defendant within four years of the filing of this petition the statute of limitation had not run. Here the trial court, by sustaining ground 9 of the plaintiff's demurrer to the defendant's answer, struck the defendant's plea of the statute of limitation entirely. This was error.

The plaintiff strongly urges that the statute of limitation did not run as to any part of the plaintiff's claims for stock sold in breach of the agreement by the defendant. As we read the cases cited in support of this position, they are distinguishable from the one here. In *Gilleland v. Welch,* 199 Ga. 341, supra, the contract was entire, not divisible. *Smith v. Georgia Loan, Savings &c. Co.,* 113 Ga. 975 (39 S. E. 410), involved an action on a promissory note and is not in point. *Byrd Printing Co. v. Whitaker Paper Co.,* 135 Ga. 865 (70 S. E. 798, Ann. Cas. 1912A 182), did not involve any question as to the divisibility of the contract or actions for successive breaches arising therefrom.

Accordingly, we hold that the defendant's plea of the statute of limitation should have been sustained by the trial court as to such sales of stock by the defendant which upon the accounting prayed for may be found to have been more than four years prior to the filing of the action, but should not be sustained as to such sales of stock as may be found to have occurred within four years of the filing of the petition.

■ Coming to the defendant's special demurrers which were all overruled by the trial court, ground 4 of the renewed and

additional demurrers demurs specially to a part of the language in paragraph 5A of the petition, which, as amended, reads: "5A. Plaintiff shows that the agreement alleged in the foregoing paragraph 5 of this petition was made by the defendant insurance corporation at a formal and organized corporate meeting of said defendant insurance corporation at which all of the directors, stockholders and officers of the defendant insurance corporation were present and acting, namely R. W. McGarity, H. Benson Ford, Alexander E. Wilson, Jr., Eldon R. Lindsey, Sam Kendrick, Emmet H. Steele, Sr., Harrell W. McEachern and W. C. Cottongim." The defendant's special demurrer objects to that portion of this paragraph which reads, "at a formal and organized corporate meeting of said defendant insurance corporation," and moves to strike the same upon the ground that it is vague and indefinite since it fails to set forth whether the alleged "organized corporate meeting" was a meeting of incorporators, a meeting of directors, a meeting of stockholders, a meeting of officers, or other type formal meeting through which the corporation was authorized to transact its business. As to this special demurrer, the trial court properly overruled it, since the allegation was sufficient to apprize the defendant fairly of the plaintiff's contention with respect to the meeting. Since the paragraph alleges that all the directors, officers, and stockholders of the insurance company were present and acting, it would seem apparent that it is not necessary to label this a meeting of directors, a meeting of stockholders, or what not, for it was, rather a meeting of all of them. The proper labeling of this meeting, this microscopic detail, lies peculiarly within the knowledge of the defendant, and the rule appears to be that in such a circumstance the plaintiff cannot be required to plead details, certainly not more specifically than has been done here. *Beebie v. Smith,* 76 Ga. App. 391, 403 (46 S. E. 2d 212); *South Georgia Power Co. v. Beavers,* 39 Ga. App. 374 (146 S. E. 924).

The defendant's special demurrer numbered 5 raises similar objections to that portion of paragraph 5C of the petition, as amended, which reads as follows: "All of the persons named in the foregoing paragraph 5A of the petition as amended acted as an organized body in their actions in said formal corporate meeting,"

charging that it is vague and indefinite in that it fails to set forth whether the persons set forth acted as a body of incorporators, directors, stockholders, officers, etc. For the reasons given in the foregoing paragraph, the trial court properly overruled this special demurrer.

The defendant's special demurrer numbered 6 demurs to that portion of paragraph 5C of the plaintiff's petition, as amended, which reads: "all of the said named persons were duly authorized to so act in behalf of said defendant insurance corporation in making said agreement with plaintiff in defendant's behalf, and were acting within the scope of their authority in so doing," and moves to strike it on the ground that it constitutes a conclusion on the part of the pleader in that there is not set forth anywhere in the petition whether the persons made the alleged agreement at a meeting of incorporators, directors, stockholders, etc. Similar objection is made to language describing the meeting in paragraph 5D of the plaintiff's petition. As to those portions of these demurrers questioning whether the meeting was a meeting of incorporators, directors, etc., the trial court properly overruled them. Special demurrer numbered 6 in effect also attacks the phrase in the petition which alleges that the parties named, who were all the directors, stockholders, and officers, were acting within the scope of their authority, as a mere conclusion. Under numerous cases it appears that averments such as these, that an agent, an officer, or other official is duly authorized to act, is not subject to objection on the ground that it is a conclusion. Thus, "The allegation, that 'Said Anderson had authority to permit and allow plaintiff to assist in the operation of the truck,' is not a conclusion but is an allegation of an ultimate fact. It was not necessary to allege the evidence by which the allegation would be proved." *Atlantic Co. v. Taylor*, 80 Ga. App. 25, 30 (54 S. E. 2d 910). See also *McMath Plantation Co. v. Allison & Co.*, 26 Ga. App. 744 (3) (107 S. E. 420) ; and *Anderson, Clayton & Co. v. Mangham*, 32 Ga. App. 152, 154, 156 (123 S. E. 159). It follows that the allegation that the parties named in the plaintiff's petition, who were alleged to be all of the directors, etc., were present and acting and were duly authorized to act for the company, is not objectionable as being a mere conclusion of the

pleader. It would appear that prima facie such parties under normal rules of corporate law would have authority to enter into a contract of this sort, and, if not, it would be a matter of defense, and again the area is one which lies peculiarly within the defendant's knowledge. Special demurrers numbered 6 and 7 were properly overruled by the trial court.

■ There remains to be considered the plaintiff's cross-bill of exceptions. The trial court sustained the plaintiff's demurrer to the defendant's answer which resulted in the striking of the defendant's plea of the statute of frauds, which ruling, as we have held on the main bill of exceptions, was erroneous. The plaintiff's cross-bill of exceptions contends that grounds 2, 3, 4, 5, 6, 7, 39 and 40 raise specifically as to the defendant's plea of the statute of frauds the objections which were raised by ground 1 of the plaintiff's demurrer. Since we have held in division 1 of this opinion that this ground should not have been sustained, the trial court properly overruled the plaintiff's demurrers numbered 2 through 7, inclusive, and 39 and 40. Ground 8 also demurs to the plea of the statute of frauds, and in view of the holding in division 1, the trial court properly overruled the plaintiff's special ground 8.

The plaintiff's special ground 9 demurred to the defendant's paragraph 22, which pleaded the statute of limitation to the contract involved. Special grounds 10 through 17, inclusive, 41, and 42, also relate to the defendant's plea of the statute of limitation. Under the holding stated in division 3 of this opinion, this plea was sustained as to a portion of the cause of action and overruled as to a portion. Thus, the rulings enunciated in division 3 on the main bill of exceptions on the question of the statute of limitation we feel sufficiently passes upon these special demurrers.

The plaintiff's special grounds 18, 19, 20, 22 through 27, inclusive, and 43 raise specifically the various objections to the defendant's plea in paragraph 23 of the answer of the statute of limitation as to the sale of any shares of stock by the defendant more than four years prior to the plaintiff's filing of the petition in this case. The trial court properly overruled these special demurrers.

The plaintiff's special grounds 8, 12, and 21 are directed to these same paragraphs of the defendant's answer on the ground that these pleas of the statute of frauds and the statute of limitation are matters of special pleas which cannot be raised by an answer. The ruling on the main bill of exceptions disposed of these special demurrers, and the trial court did not err in overruling them. We see no reason why the statute of limitation or the statute of frauds may not be raised by a special plea in the answer itself. See *Sellers v. City of Summerville*, 91 Ga. App. 105, 109 (13) (85 S. E. 2d 56) and *Voyles v. Carr*, 173 Ga. 627 (3) (160 S. E. 801).

Special grounds 28, 31, and 32 are directed to paragraph 6 of the defendant's answer, which reads, "Answering Paragraph 8 of the plaintiff's petition, the defendant avers that, by formal action in January, 1950, the board of directors of defendant gave instructions that the plaintiff should be notified that his services would not be required by the defendant after February 1, 1950," attacking this paragraph on the ground that it is evasive and not responsive, that it does not allege to whom the alleged instructions were given, and that it alleges irrelevant and immaterial matter in that it was not alleged that the instructions were carried out. Since the plaintiff's petition states that the president notified him he would not be permitted to sell any further shares of stock after February 1, 1950, the defendant's answer in effect admits that the board of directors gave such instructions. We, accordingly, feel that there is no merit in the grounds numbered 28, 31, and 32, and the trial court properly overruled them.

The plaintiff's special grounds 29, 33, 34, 35, 36, and 37 are directed to paragraph 9 of defendant's answer, which, in substance, attack the defendant's allegation that there was a merger between the defendant and the Piedmont Corporation, approved by the Secretary of State of Georgia, under which, among other things, the 50,000 shares of capital stock of the Piedmont Corporation were converted into a larger number of shares of capital stock of the defendant. These special grounds of the plaintiff's demurrer attack this paragraph on the grounds that the merger agreement and the order of the Secretary of State are not attached to the answer, nor the substance set out, and that the

paragraph undertakes to construe the merger agreement rather than to set out or plead it in substance so that the court may construe it, and that it is not set out how or in what manner the conversion took place or the name of the surviving corporation. Since the question of the merger and its terms may conceivably have some relevance to the action herein brought, we hold that special grounds 33, 34, 35, 36, and 37 should have been sustained. Ground 29, we feel, does not have any merit and was properly ·overruled.

This leaves special ground 30 of the plaintiff's demurrer to the defendant's answer, which avers that the plaintiff, during the years 1947, 1948, and 1949, did secure subscriptions to shares of the defendant's capital stock and was paid a commission thereon, but that the plaintiff was not paid a commission on all of the subscriptions to the capital stock secured during the period, and that commissions were paid to other persons during the period for the securing of subscriptions to the defendant's capital stock. The contention is that the persons to whom the payments were made and the dates and amounts of the payments should have been set out, and since they were not, paragraph 20 should have been stricken, citing *Thomas v. Clarkson,* 125 Ga. 72, 81 (5), (54 S. E. 77, 6 L. R. A. (NS) 658), which was a suit on some promissory notes to which the defendant pleaded some payments, but did not set out the time, place, or amount of the payments. There the Supreme Court held that a demurrer to this plea was properly sustained. Considering the contention of the plaintiff's petition that he had the exclusive right to solicit subscriptions to all of the defendant's capital stock, the answer in paragraph 20 thus attacked, in effect, denies the plaintiff had or exercised any exclusive rights to sell the shares and avers that others sold shares of stock during the period. What shares were sold and to whom are matters of evidence and are not required to be set out in the pleadings. The case of *Thomas v. Clarkson,* supra, obviously is not in point.

For the foregoing reasons, the trial judge erred in overruling the plaintiff's special demurrers numbered 33, 34, 35, 36, and 37 and in sustaining special demurrers numbered 1, 9, and 44. The

remaining 36 special demurrers of the plaintiff to the defendant's answer were properly overruled.

*Judgment affirmed in part and reversed in part on the main bill of exceptions and on the cross-bill.*

*Townsend, P. J., Carlisle, Nichols, Frankum and Jordan, JJ., concur. Felton, C. J., dissents in part.*

FELTON, Chief Judge, dissenting in part. I concur in the opinion and judgment except that I dissent from the ruling in division 1 and the reversal of the ruling there treated.

If the contract sued on was within the statute of frauds it appeared on the face of the record and was subject to demurrer and not a plea. Since the plea contending that the action here brought was barred by the statute did not set up another and different contract which would have been barred by the statute, the demurrer to the plea was properly sustained.

Paragraph 21 of the answer alleges: "Further answering said petition, and by way of special plea, the defendant avers that the alleged cause of action in the plaintiff's petition rests upon an agreement in parol; that said alleged agreement could not be performed within one year; and that, therefore, said cause of action is barred by the statute of frauds." This paragraph of the answer in truth and in fact is a demurrer for the reason that it does not admit the execution of the parol contract set forth in the petition and, as stated above, it is not good as a plea of the statute of frauds for the reason that it does not set up a different state of facts from that alleged in the petition upon which to base the contention that it is barred by said statute. Even under the theory enunciated in *Mendel v. Miller & Sons,* 134 Ga. 610 (68 S. E. 430), namely, that if the defendant by his answer admits the agreement, but pleads and insists on the benefit of the statute, he will be entitled to it notwithstanding such admission, the defendant does not bring himself within the rule announced in the *Mendel* case for the reason that he does not admit the parol agreement.