816 F.2d 673
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
William A. TOLBARD, Plaintiff-Appellant,
v.
BECHTEL CORPORATION, now known as: Sequoia Ventures, Inc.
and Industrial Indemnity Insurance Company,
Defendant-Appellees.
 No. 86-2057.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 7, 1987.
Decided April 6, 1987.
 
 Before WINTER, Chief Judge, PHILLIPS, Circuit Judge, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 Sidney Blum, on brief, for appellant.
 William R. Levasseur (Semmes, Bowen & Semmes, on brief), for appellees.
 PER CURIAM:
 
 
 1
 Appellant William A. Tolbard here appeals a final judgment against him in the United States District Court for the District of Maryland. The district court, following a brief bench trial, decided that the applicable three-year statute of limitations barred Tolbard's breach of contract claim. Because we cannot identify the basis for the district court's conclusion, we vacate the decision and remand for further consideration.
 
 
 2
 * On November 18, 1974, Tolbard seriously injured his back on a Maryland job site while working for appellee Bechtel Corporation (Bechtel). Tolbard applied for workmen's compensation, and on August 12, 1980 the Maryland Workmen's Compensation Commission found Tolbard permanently and totally disabled. The Commission ordered Bechtel and its insurer, appellee Industrial Indemnity Insurance Company (Industrial Indemnity), to pay Tolbard's medical expenses as well as $102.30 per week beginning April 27, 1978, until total payments by Bechtel and Industrial Indemnity reached $21,645. Thereafter, under the Commission's order Tolbard would receive $102.30 per week from the Maryland Subsequent Injury Fund, with total payments from the Fund not to exceed $23,355. Although Tolbard was, according to the Commission's Order, permanently and totally disabled, only 50% of his permanent disability stemmed from the 1974 injury. The Commission attributed the remaining 50% of the permanent total disability to injuries Tolbard suffered while working for other employers. Bechtel and Industrial Indemnity began their compensation payments shortly following the August 12, 1980 Award. According to Tolbard, the last payment under the Award was made on May 12, 1982.
 
 
 3
 Tolbard filed this diversity claim for breach of contract on March 8, 1985. Tolbard's rather convoluted legal theory looks to a provision in the Collective Bargaining Agreement between Bechtel and Tolbard's Union, Local No. 5 of the International Association of Bridge, Structural and Ornamental Iron Workers, Riggers and Machinery Movers, Washington D.C. The Working Rules of Local No. 5, which Bechtel agreed to abide by in its National Agreement with the Union, provide in Sec. 39(b):
 
 
 4
 The Employer will carry an excess compensation policy on his employees when they are working outside the District of Columbia which shall give the employee additional compensation in Maryland and Virginia equal to that received in the District of Columbia.
 
 
 5
 Tolbard essentially argues that this provision not only obligated Bechtel to purchase an "excess compensation policy," which he concedes Bechtel did, but also created a contractual obligation to pay D.C. workmen's compensation rates to any injured Local members that Bechtel employed regardless of their place of injury. Tolbard argues that he would have received an additional $158.70 per week under a D.C. claim, and he demands that amount from Bechtel and Industrial Indemnity in this action.
 
 
 6
 Purely as a matter of contract interpretation, Tolbard's claim presents a number of difficulties. To begin with, the Working Rules by their terms impose no obligation on Bechtel beyond simply purchasing appropriate insurance, and Tolbard's Complaint concedes that Bechtel did that much. If the provision promises more than that, then its latent message is unclear. The provision might, for example, be read to mean simply that Bechtel must insure itself adequately against possible liability under the D.C. Compensation Act.[1] Alternatively, the provision might imply a promise by Bechtel to pay compensation at the D.C. rate but only when Bechtel itself would be liable for a greater amount if the D.C. Act applied.[2] In short, Sec. 39(b) does not on its face identify the precise character of any related contractual obligation of Bechtel and its insurer to make payments from an excess compensation insurance policy--and the construction Tolbard offers is not the only possible one.[3]
 
 
 7
 The district court, without deciding whether a contract of the sort Tolbard alleges even exists, attempted to resolve the case on a simple and narrow ground. Under Maryland law, breach of contract claims are subject to a three-year limitations period. Md.Cts. & Jud.Proc.Code Ann., Sec. 5-101 (1984). Since Tolbard brought his claim more than four years after Bechtel began its allegedly deficient compensation payments, the district court concluded that Tolbard's suit, even if premised on a proper interpretation of Sec. 39(b), was untimely.
 
 
 8
 The problem with this resolution, at least absent fuller findings of fact, is that Maryland law relates the character and timing of a contractual breach to the character of the contract. When a contract calls for installment payments, the breach of any one installment initiates the limitations period only for that installment; when successive installment obligations are breached, each breach initiates a fresh limitation period. See, for example, Avery v. Weitz, 407 A.2d 769 (Md.Ct.Sp.App.1979). Thus if Tolbard properly characterizes Bechtel's obligation as one for installment payments of an extra $158.70 per week, then he can still sue for each of the extra excess compensation payments that fall within three years of his suit.
 
 
 9
 The district court's opinion never refers to the unequivocal Maryland case law on installment contracts and limitations defenses and never explicitly rejects Tolbard's assertion that the alleged contract contemplates an installment obligation. Without more extensive findings of fact, we simply cannot be sure the district court applied the proper legal standard in deciding that Tolbard's claim was barred.
 
 
 10
 The underlying problem is that the accrual date for Tolbard's cause of action cannot be fixed without first confronting the questions regarding the existence and character of the alleged contract. The courts have never devised a precise formula for distinguishing between "entire" and "severable" contracts, and the distinction is sometimes difficult to draw. See Corbin on Contracts Sec. 687 (1960 ed.). In most cases, of course, the distinction is plain on the face of the contract and no problem arises. Where as here, however, there is a dispute about the characterization and the contract itself is ambiguous, the courts must divine the intent of the parties. See, e.g., Piedmont Life Insurance Co. v. Bell, 119 S.E.2d 63 (Ga.Ct.App.1961); Williston on Contracts, Sec. 360 (3d ed. 1978). The contract language is naturally important in ascertaining this intent, but other evidence may also prove helpful. Williston Sec. 360. Ultimately, the trier of fact must determine the divisibility or unity of a contract. The key point is that the determination cannot be made without reference to the promises exchanged by the contracting parties. Tolbard's assertion here that the alleged contract "plainly" creates a divisible obligation is certainly not dispositive.[4] At the same time, however, we do not see how the district court could have decided that the alleged contract was "entire" without silently assessing Tolbard's contract claim apart from Bechtel's limitation defense.
 
 
 11
 In sum, the district court should weigh Tolbard's claim by making two inquiries in sequence. First, the district court should determine whether Sec. 39(b) gives Tolbard a contractual claim at all and what precise obligations, if any, Bechtel and Industrial Indemnity undertook. Second, if Sec. 39(b) creates a contract of the sort Tolbard alleges then the district court must decide whether the obligation of Bechtel and Industrial Indemnity calls for installment payments. In making this second determination the court should consider the language of the alleged contract and any other evidence bearing on the intent of the parties. We realize that the district court may have implicitly decided the case in the manner we recommend, but if it did so it is not clear on the record. Accordingly, we vacate the decision and remand for further proceedings consistent with this opinion.
 
 
 12
 VACATED AND REMANDED.
 
 
 
 [1]
 For worker's injuries suffered prior to 1980, the D.C. Workmen's Compensation Act, which incorporated the Longshore and Harbor Workers Compensation Act (LHWCA), 33 U.S.C. Sec. 901 et seq., applied whenever the "employer-employee relationship" bore a "substantial connection" to the District. Cardillo v. Liberty Mutual Insurance Co., 330 U.S. 469, 476 (1957). Under this expansive jurisdictional test, the Act has been applied in a number of cases where neither the employer nor the employee resided in the District and the worker's injury occurred outside the District. See, e.g., Cardillo, 330 U.S. at 469; Director, OWCP v. National Van Lines, 613 F.2d 972 (D.C.Cir.1979). One of the factors used to test the "substantiality" of the connection is the worker's place of hire, Cardillo, 469 U.S. at 475, and we note in passing that Tolbard's Union is a D.C. Local. We cannot tell from the appellate record whether Tolbard could have made a direct claim for D.C. compensation, but Sec. 39(d) might be read simply as a requirement that Bechtel carry insurance adequate to cover such a contingency
 
 
 [2]
 Under the LHWCA, the employer's own liability is sometimes less than under the Maryland and Virginia statutes. Specifically, the LHWCA limits the employer's obligation to pay compensation to 104 weeks when the worker's total disability results from the combined effect of the disabling injury and a preexisting permanent partial disability about which the employer is informed. 33 U.S.C. Sec. 908(f). Payments beyond 104 weeks are made out of a separate compensation fund created by the statute. Given the Maryland Commission's finding that Tolbard suffered a preexisting 50% permanent partial disability before 1974, Bechtel apparently would have paid less under the D.C. Act
 
 
 [3]
 Tolbard's interpretation of the alleged contract would require Bechtel and Industrial Indemnity to make up the difference between a Maryland award and a D.C. award even if another employer was primarily responsible for his total disability. Here, in fact, the Maryland Commission found Bechtel responsible for only 50% of Tolbard's permanent total disability
 
 
 [4]
 Bechtel's alleged obligation is contractual, and exists apart from, and would not be paid through, any workmen's compensation mechanism. Although workmen's compensation payments are normally paid in installments, we note that many workmen's compensation statutes, including both the Maryland statute and the LHWCA, permit lump sum settlements in some circumstances. See Md.Ann.Code Art. 101 Sec. 49 (1986); 33 U.S.C. Sec. 908(i)