938 So.2d 571 (2006)
BARBARA G. BANKS, P.A., a Florida Professional Association, Appellant,
v.
THOMAS D. LARDIN, P.A., a Florida Professional Association and THOMAS D. LARDIN, ESQ., Appellees.
No. 4D05-3911.
District Court of Appeal of Florida, Fourth District.
September 20, 2006.
Franklin L. Zemel and John M. Cooney of Arnstein & Lehr, LLP, Fort Lauderdale, for appellant.
Warren B. Kwavnick and David F. Cooney of Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A., Fort Lauderdale, for appellees.
HAZOURI, J.
On March 11, 2005, appellant, Barbara G. Banks, P.A. ("Banks, P.A."), filed a complaint against appellees, Thomas D. Lardin, P.A. ("Lardin, P.A.") and Thomas Lardin ("Lardin"), individually, for breach of their joint venture agreement, declaratory relief to determine Banks, P.A.'s, rights under the agreement, and unjust enrichment. Appellees responded to the complaint by filing a motion for summary judgment asserting that the alleged breaches occurred before March 11, 2001, four years before the complaint was filed. As a result, the action on the oral agreement was barred by the four-year statute of limitations in section 95.11(3)(k), Florida Statutes (2005). The trial court granted the motion finding that Banks, P.A.'s, cause of action accrued when appellees repudiated the contract on September 27, 1999, and was, therefore, barred by the statute of limitations. We disagree with the trial court's conclusion and reverse and remand for further proceedings.
In 1986, Banks, P.A., and Lardin, P.A., law firms in South Florida, began a relationship in which they cooperated in the origination, processing, institution, settlement and trial of personal injury and wrongful death actions for their clients. On January 26, 1991, the daughter of a long-term client of Banks, P.A., was killed in an automobile accident and the client contacted Banks, P.A., for representation in his potential actions arising from the accident. Banks ("Banks") contacted Lardin who met with her and the client. They all discussed the joint representation in which Banks, P.A., would develop the cases to obtain the greatest possible recovery and in the event any action proceeded to trial with respect to any potential defendant, Lardin would handle any trial. Banks and Lardin disclosed to the client that it was their practice to split equally any attorney's fees earned but that this would not increase the total legal fees or costs due under the client's contingency fee agreement with them. The client executed the contingency fee agreement with Banks, P.A., for representation in the claim for damages against any person, firm or corporation liable for the death caused by the accident.
While pursuing possible claims for the client including negligence claims against the drivers of the two vehicles involved in the collision and possible medical malpractice claims against the treating physicians, Banks also made sure that the vehicle in which the decedent was riding, a Hyundai Excel, was preserved as evidence for use in any future actions. In 1992, Banks settled cases against the decedent's insurer for uninsured motorist benefits as well as against the insurer of the negligent drivers. Banks and Lardin split the contingent fees collected according to their agreement. The client also agreed to hold funds in escrow for a products liability case against Hyundai.
In March 1994, Lardin brought in out-of-state counsel after deciding he did not have the requisite skills to try a products liability case. On March 18, 1994, as a result of bringing in a third attorney, the joint venture agreement was amended. Banks, P.A., was to receive the first 20% of fees paid. Of the remaining 80%, 40% would be paid to out-of-state counsel and the remaining 40% would be split between Banks, P.A., and Lardin.
In April 1995, Banks, P.A., contributed $7,000 toward costs in the products liability case which Lardin accepted. After a week-long trial in February 1996, the jury returned a verdict for the defendants Hyundai Motor Company and Hyundai Motor America Corporation. The case went to trial under the retainer agreement between Banks, P.A., and the client. Lardin advised Banks of the loss and that they would take an appeal. Lardin said he would keep her advised of the result.
The district court reversed and remanded the products liability case for a new trial which was scheduled for October and November of 1999. Because Banks and Lardin had a "falling out," Lardin did not advise her of these events. She learned of the retrial on September 2, 1999, and filed a notice of appearance.
On September 27, 1999, Lardin responded to the notice of appearance by writing a letter to Banks in which he informed her that there had been an expensive trial and appeal and the reversal of the defense verdict was only on the issue of strict liability failure to warn. Lardin told Banks that he and the out-of-state co-counsel were unwilling to continue handling the case through trial if they had to pay a referral fee. He suggested that if Banks wanted to substantially contribute to the costs which had already reached $100,000, they could work out an equitable arrangement. Lardin and co-counsel offered to withdraw and allow Banks to make arrangements to try the case which was set for October. Lardin emphasized that although he and co-counsel had spent an incredible amount of time and money, prevailing was a long shot. He concluded, "I believe the prognosis for any positive cash flow is highly unlikely but, nonetheless, think we should have this discussion before, rather than after, a trial." Lardin did not seek to strike Banks's notice of appearance.
On November 5, 1999, the jury returned a verdict for the client against Hyundai for $6,500,000. The case was tried under the original retainer agreement. Upon learning of the verdict, Banks, P.A., retained counsel and filed a notice of charging lien. Although Lardin did not move to strike the notice of charging lien, he arranged for the client to execute a new retainer agreement which excluded Banks, P.A. Lardin did not disclose the new agreement to Banks and induced the client to breach the agreement with Banks, P.A.
The judgment against Hyundai was subsequently sustained on appeal and Lardin, P.A., retained the contingent fee. Banks, P.A., filed suit when appellees failed to split the fee as provided by their contract.
Appellees' motion for summary judgment asserted that the majority of the alleged breaches occurred more than four years before the complaint was filed and as a result any action was barred by the four-year statute of limitations. § 95.11(3)(k), Fla. Stat. (2003). In particular, they assert that Banks, P.A., was aware that the agreement was terminated as of September 27, 1999, when Lardin sent the letter to Banks stating that he and co-counsel would not try the case and pay Banks a referral fee. In granting the motion for summary judgment, the trial court ruled that Banks, P.A.'s, cause of action accrued upon appellees' repudiation of the contract on September 27, 1999, and the statute of limitations expired before the suit was filed in 2005. The trial court cited Hospital Mortgage Group v. First Prudential Development Corp., 411 So. 2d 181 (Fla. 1982), in support of its decision.
The trial court's determination that appellees are entitled to judgment as a matter of law is reviewable de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).
Banks, P.A., argues on appeal that Lardin, P.A., did not breach the contract until it refused to pay Banks, P.A., its share of the attorney's fees collected on the products liability case as provided by their contract. Banks, P.A., concludes that the cause of action, therefore, did not accrue until the appeal process for the products liability case was completed and the attorney's fees were paid to Lardin, P.A., in 2004. We agree.
Section 95.031, Florida Statutes, provides that "the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues." Subsection (1) provides that "[a] cause of action accrues when the last element constituting the cause of action occurs."
In Mosher v. Anderson, 817 So. 2d 812 (Fla. 2002), the supreme court held "that a cause of action on an oral loan payable upon demand accrues, and the statute of limitations begins to run, at the time when demand for payment is made." Id. A cause of action on a contract accrues upon breach of the contract. Id. at 814 (citing Fradley v. Dade County, 187 So. 2d 48 (Fla. 3d DCA 1966)). In this case, performance of the contract, i.e., payment to Banks, P.A., by Lardin, P.A., was not due until an attorney's fee was collected. When Lardin, P.A., refused to pay, the breach occurred and the cause of action accrued.
Appellees argue that there was an anticipatory repudiation and, therefore, a breach, when Lardin sent his letter of September 27, 1999 to Banks. Appellees assert that under Florida law a repudiation of an agreement is a breach giving rise to an immediate cause of action and the commencement of the statute of limitations. In support of this argument, appellees cite several cases which we find distinguishable as they do not involve causes of action for breach of a contract. See Collinson v. Miller, 903 So. 2d 221 (Fla. 2d DCA 2005); City of Hollywood v. Petrosino, 864 So. 2d 1175 (Fla. 4th DCA 2004); Margolis v. Andromides, 732 So. 2d 507 (Fla. 4th DCA 1999).
In Collinson v. Miller, 903 So. 2d 221 (Fla. 2d DCA 2005), for example, the stepmother promised her husband she would retain properties she was to inherit from him and leave them to his children. After the husband died, she sold one of the properties, essentially repudiating the contract, placing the children on notice that she was not going to abide by the terms of the agreement. The children did not file suit until after the stepmother died, which was more than fifteen years after the repudiation. They filed a cause of action seeking to impress the property sold with a constructive trust. The court found recovery of the property was barred by the statute of limitations. Although the repudiation of the promise commenced the running of the statute of limitations, the court indicated this was because it was an action for a constructive trust on the real property, not an action for breach of contract. Generally, the breach of a contract requiring the promisor to make a will or devise does not accrue until the death of the promisor. See Tensfeldt v. Tensfeldt, 839 So. 2d 720 (Fla. 2d DCA 2003).
Appellees also cite Abbott Laboratories, Inc. v. General Electric Capital, 765 So. 2d 737, 740 (Fla. 5th DCA 2000), asserting that Banks, P.A.'s, cause of action accrued at the time of the repudiation, triggering the running of the statute of limitations, even though there was no incurrence of damages at that time. In Abbott, during the term of the parties' contract, Abbott breached one provision of that contract by entering into a separate agreement with a customer. GECC did not file suit until more than five years later when Abbott breached the indemnification provision of the same contract. The district court held:
Under section 95.11(2)(b), the limitations period begins to run when "the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. (1997). The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages. . . . GECC's injury was simultaneous with Abbott's breach. GECC's injury occurred when Abbot entered into the Goodgame agreement at which time nominal damages had been sustained.
Id. at 740 (citations omitted). Abbott is distinguishable from the instant case because the cause of action arose out of an actual breach of the contract. In the instant case there was no breach until Lardin, P.A., obtained attorney's fees and refused to share them with Banks, P.A.
The trial court relied upon Hospital Mortgage Group v. First Prudential Development Corp., 411 So. 2d 181 (Fla. 1982), in making its decision. The supreme court held that "a repudiation gives rise to a claim for damages by the nonbreaching party." Id. at 182. However, Hospital Mortgage does not determine when the claim arises for purposes of applying the statute of limitations.
If we consider Lardin's letter to be an anticipatory repudiation of the parties' contract, the statute of limitations does not necessarily begin to run at that point. "[W]here one party, even before the time for performance of the contract has arrived, renounces it to the other party, the latter may act on the renunciation, treat the contract as broken, and sue before the time for performance." Sullivan v. McMillan, 8 So. 450, 457 (Fla. 1890). The supreme court's reference to a party's choice to act on the renunciation is explained in Perry v. Shaw, 13 So. 2d 811 (Fla. 1943). In what came to be the dissent after rehearing, Justice Chapman states:
Williston on Contracts Vol. 5 (Rev. Ed.) par. 1326, p. 3728, states the rule that any voluntary affirmative act which renders performance of a contract impossible, or apparently impossible, is an anticipatory breach, and upon the breach the party has a right, first, to rescind the contract altogether; second, to elect to treat the repudiation as a breach by bringing suit or by making some change in position; or, third, to await the time for performance of the contract and bring suit after that time has arrived. See par. 1337, p. 3753, supra.
Id. at 814.
Although the parties cite no Florida case dealing with anticipatory breach and the application of a statute of limitation, we find Piedmont Life Insurance Co. v. Bell, 119 S.E.2d 63 (Ga. Ct. App. 1961), persuasive. In Piedmont, the appellate court applied the principle stated in Perry to a statute of limitations case. In Bell, the defendant orally agreed to employ the plaintiff full-time to solicit subscriptions for the remaining portion of the defendant's initial 10,000 shares of authorized capital stock. Plaintiff was to complete the sales within two years and receive ten percent of the purchase price. If he succeeded, he would also be granted the exclusive right until January 1957 to solicit subscriptions to sell the remaining 90,000 shares at a stipulated price or such price as the defendant might fix. After the plaintiff timely sold the initially authorized capital stock, the defendant paid the agreed upon commission. The plaintiff continued his performance and began soliciting subscriptions for the remaining shares when, as of February 1, 1950, the defendant terminated its permission to the plaintiff to solicit subscriptions or sell any further shares. Starting in 1950, the defendant sold some of the 90,000 shares. The plaintiff remained ready to perform until January 1, 1957, when his rights under the contract ended.
In 1959, the plaintiff filed his complaint on the oral contract. The defendant filed a motion to dismiss asserting that the contract action was barred by the statute of limitations. The trial court denied the motion and the defendant appealed arguing that the cause of action arose on February 1, 1950, when it notified the plaintiff that he would not be permitted to sell any more subscriptions, and the complaint was not filed until 1959, long after the four-year statute of limitations expired. In response the plaintiff argued:
The plaintiff's theory is that under the doctrine of anticipatory breach, when the plaintiff was notified that the defendant would not further permit any sales of the stock by him, there was only a tender of a breach which did not give rise to a right of action unless and until accepted by the plaintiff, and since the plaintiff did not accept the breach, but on the contrary, stood ready to perform throughout the term of his exclusive sales rights, he could thus wait until the ultimate time set for performance and then bring the action, as was done in this case, and since the final expiration of his rights under the alleged contract did not occur until January 1, 1957, the action was brought seasonably.
Id. at 71. The appellate court determined that the plaintiff was permitted to "await the time for performance of the contract and then bring suit after the time has arrived," citing to Williston on Contracts as was cited in Perry. Therefore, the statute of limitations did not begin to run until any payment was due the plaintiff upon the stock subscription sales.
Similarly, in the instant case, Lardin's letter of September 27, 1999, informed Banks that Lardin and his out-of-state counsel did not want to work with Banks or pay her any fees which might be earned. Banks, P.A., did not accept this tender of a breach and continued as counsel for the client, ready to perform its obligations under the contract. Lardin also performed his obligations by trying the products liability case and eventually obtaining the contingency fee. Under the parties' contract, when Lardin, P.A., was paid its fee, it was to finally perform by paying Banks, P.A., its share. Banks, P.A., brought this action within four years of Lardin, P.A.'s, non-performance.
The allegations in the complaint indicate it was the intention of the parties under the contract to divide the attorney's fees upon their receipt by the attorney who obtained them. Lardin, P.A., was paid attorney's fees for the products liability case in 2004. Banks, P.A., filed this suit in 2005, well within the four-year statute of limitations.
Banks, P.A., has also included a claim for unjust enrichment which the trial court also dismissed as barred by the statute of limitations. "To state a claim for unjust enrichment, a plaintiff must plead the following elements: 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." Della Ratta v. Della Ratta, 927 So. 2d 1055, 1059 (Fla. 4th DCA 2006). Banks, P.A., alleged that Lardin, P.A., did not receive the benefit until it was paid the attorney's fees in 2004. The cause of action accrued when this last element of the cause of action occurred and the suit was filed well within the statute of limitations.
Lardin argues that due to the inconsistency of the claims no cause of action under a quasi-contractual theory can exist where there is also alleged to be an express contract concerning the same subject matter. See Kovtan v. Frederiksen, 449 So. 2d 1 (Fla. 2d DCA 1984); Tobin & Tobin Ins. Agency, Inc. v. Zeskind, 315 So. 2d 518 (Fla. 3d DCA 1975). Florida Rule of Civil Procedure 1.110(g) provides that "[a] party may also state as many separate claims or defenses as that party has, regardless of consistency and whether based on legal or equitable grounds or both." The trial court did not grant summary judgment on this ground and we find, at this point in the proceedings, the trial court may not determine the inconsistency of the claims pled.
We reverse the trial court's order granting summary judgment and remand for further proceedings.
Reversed and Remanded.
GUNTHER and MAY, JJ., concur.
Not final until disposition of timely filed motion for rehearing.