# Third District Court of Appeal

## State of Florida

Opinion filed December 6, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-1396
Lower Tribunal No. 13-4048
_____

**Flatirons Bank,**
Appellant,

vs.

**The Alan W. Steinberg Limited Partnership,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Stanford Blake and Barbara Areces, Judges.

Perez & Rodriguez, P.A., and Javier J. Rodriguez, Johanna Castellon-Vega, and Freddy X. Muñoz, for appellant.

Schwed Kahle & Kress, P.A., and Lloyd R. Schwed and Douglas A. Kahle (Palm Beach Gardens), for appellee.

Before ROTHENBERG, C.J., and SALTER and SCALES, JJ.

SCALES, J.

Appellant, plaintiff below, Flatirons Bank ("Flatirons") appeals the trial court's final judgment in favor of Appellee, defendant below, The Alan W. Steinberg Limited Partnership ("Steinberg"). We affirm because the trial court's determination that Steinberg was not unjustly enriched is supported by competent, substantial evidence; and because Flatirons's unjust enrichment claim against Steinberg was filed beyond the applicable statute of limitations. Further, Flatirons's claim under the Colorado civil theft statute was properly dismissed.

## I. Facts

While somewhat complicated, the relevant facts are not in dispute. Flatirons is a small community bank located in Boulder, Colorado. In early 2009, Flatirons's former board chairman and president, Mark Yost, arranged for Flatirons to issue bogus lines of credit which enabled Yost to steal approximately $3,845,000.00 from Flatirons.

Flatirons discovered Yost's fraud in August of 2010. In March of 2012, Flatirons's resulting investigation revealed that, on January 20, 2009, Yost transferred $1,000,000.00 from one of the bogus lines of credit to an account at Elevations Credit Union in Colorado. The Elevations account receiving the funds was owned by ICP II LP, an entity controlled by Yost.

Later on January 20, 2009, Yost transferred the sum of $1,050,000.00 from the ICP II LP account at Elevations to another account at Elevations owned by the

2

Yost Partnership. The Yost Partnership was a Colorado limited partnership that operated from October of 1991 until August of 2010. The Yost Partnership was an investment vehicle controlled by Yost. Limited partners of the Yost Partnership invested cash into the Yost Partnership with the expectation that their investments would be responsibly managed by Yost and would realize positive returns.

Later that same day on January 20, 2009, the Yost Partnership transferred $1,000,000.00 from the Yost Partnership account, through an account at Merrill Group in New York, to a Florida bank account owned by Steinberg. Steinberg is a New York limited partnership that also was a limited partner and investor in the Yost Partnership.[1] From January of 2000 through January of 2004, Steinberg invested a total of $2,200,000.00 into the Yost Partnership.

As it turns out, not only was Yost embezzling funds from Flatirons, he was grossly misleading the Yost Partnership investors and limited partners regarding the status of their investments. For example, in 2005, the total assets for the Yost Partnership were approximately $11,500,000.00, but were reported to investors at over $30,000,000.00. In January of 2009, total Yost Partnership assets were approximately $1,200,000.00, but were reported at over $28,000,000.00.

Indeed, on January 20, 2009, the date on which the Yost Partnership transferred $1,000,000.00 to Steinberg, the actual value of Steinberg's interest in

---

[1] Yost had no ownership in Steinberg.

the Yost Partnership was only $138,179.90 – a far cry from the $2,200,000.00 Steinberg had invested in the Yost Partnership.[2]

Seeking to recoup some of the stolen funds, on February 1, 2013, Flatirons filed a three-count complaint against Steinberg in the Miami-Dade Circuit Court. Flatirons alleged that: (i) Steinberg was unjustly enriched by Yost's conduct (Count I); (ii) under Colorado's civil theft statute, Steinberg was required to repay the $1,000,000.00 to Flatirons (Count II); and (iii) Steinberg had converted Flatirons's funds and was therefore liable to Flatirons (Count III).

The trial court dismissed Flatirons's statutory and conversion claims. The case proceeded to a bench trial on Flatirons's unjust enrichment claim, and Steinberg's two principal affirmative defenses to same (that Flatirons's claim was barred by Florida's four-year statute of limitations and that Flatirons had unclean hands).

After the trial, the trial court made several findings of fact:

- Flatirons and Steinberg had no relationship with each other;

- Steinberg received the $1,000,000.00 in good faith and without knowledge of Yost's fraud;

_____

[2] The Yost Partnership's $1,000,000.00 transfer to Steinberg was only part of Yost's efforts to mollify Yost Partnership investors and limited partners. The record reflects that, of the $3,845,000.00 Yost stole from Flatirons, approximately $2,650,000.00 was used to make payments to Yost Partnership investors and limited partners.

- Upon receiving the $1,000,000.00 transfer, Steinberg actually suffered a net loss of approximately $1,200,000.00 as a result of the Yost Partnership's fraud and misconduct;

- As a result of Steinberg's investment into the Yost Partnership, Steinberg had paid adequate consideration for the $1,000,000.00 that the Yost Partnership transferred to Steinberg; and

- Flatirons conferred no direct benefit on Steinberg.

Ultimately, the trial court entered final judgment for Steinberg, determining that Flatirons failed to establish its unjust enrichment claim against Steinberg. The trial court also determined that Flatirons's unjust enrichment claim against Steinberg was barred by Florida's four-year statute of limitations. Flatirons timely appealed this final judgment, including the trial court's earlier dismissal of Flatirons's claim under Colorado's civil theft statute.[3]

**II. Standard of Review**

We review de novo both the trial court's dismissal of Flatirons's statutory civil theft claim and the trial court's determination that Flatirons's unjust enrichment claim was barred by Florida's statute of limitations. Saltponds Condo. Ass'n, Inc. v. Walbridge Aldinger Co., 979 So. 2d 1240, 1241 (Fla. 3d DCA 2008). We review the trial court's findings of fact regarding Flatirons's unjust

---

[3] Flatirons did not appeal the trial court's dismissal of Flatirons's conversion claim.

enrichment claim to determine whether those findings are supported by competent, substantial evidence. <u>Reimbursement Recovery, Inc. v. Indian River Mem'l Hosp., Inc.</u>, 22 So. 3d 679, 682 (Fla. 4th DCA 2009).

**III. Analysis**

*A. Flatirons's claim based on Colorado's civil theft statute*

The trial court dismissed Flatirons's claim under Colorado's civil theft statute,[4] holding that Colorado's civil theft statute was inapplicable to claims based primarily on activity occurring in Florida. The trial court reasoned that because the Florida Legislature has enacted a civil theft statute,[5] Florida's statute – rather than Colorado's – would apply because Flatirons's claim against Steinberg was premised entirely upon Steinberg's receipt of the stolen funds occurring exclusively in Florida.[6]

---

[4] Colorado's civil theft statute reads, in relevant part, as follows:

> All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property.

Colo. Rev. Stat. § 18-4-405 (2013).

[5] <u>See</u> § 772.11, Fla. Stat. (2013).

[6] Understandably, Flatirons did not seek recovery against Steinberg under Florida's civil theft statute. Unlike the Colorado statute, Florida's civil theft statute provides no right of action against an innocent third party in possession of stolen property.

On appeal, Flatirons argues that the trial court erred by not applying Florida "conflict of laws" tort jurisprudence to determine which civil theft statute applied. Flatirons argues that the trial court should have performed the "significant relationships test" required by Bishop v. Florida Specialty Paint Co., 389 So. 2d 999 (Fla. 1980) (adopting the significant relationships test to determine which forum's law applies in a tort action brought in Florida); and that, had the trial court correctly applied the Bishop test, Colorado's civil theft statute would govern Flatirons's claim because Colorado, rather than Florida, has the most significant relationships to the occurrence and the parties.

The record reflects that the trial court reviewed the four corners of Flatirons's complaint, along with its extensive exhibits, in search of a nexus between the state of Colorado and Flatirons's claim against Steinberg. We engage in the same exercise, de novo, Morejon v. Mariners Hosp., Inc., 197 So. 3d 591, 593 (Fla. 3d DCA 2016), and agree with the trial court. While Yost's theft of Flatirons's funds may have occurred in Colorado, *nothing* alleged in Flatirons's complaint or reflected in its exhibits, reveals *any* conduct, activity or omission by Steinberg that would warrant subjecting Steinberg to a Colorado statutory cause of action. Because Flatirons's complaint is devoid of allegations establishing *any* nexus between Steinberg and Colorado, we need not speculate on what allegations may be sufficient to require a party, in a Florida state court, to defend against

7

another state's purely statutory cause of action. Suffice to say that when, as here, a complaint is devoid of allegations of conduct, activities or omissions occurring in another state, a Florida trial court has no basis to subject a defendant to a cause of action created by another state's legislature.[7]

The dissent adopts Flatirons's argument and suggests that the trial court reversibly erred by not conducting the significant relationships test established in Bishop. See dissenting opinion at 18. Bishop holds that, in a personal injury case, the law of the state where the injury occurred generally determines the rights and liabilities of the parties, except that the law of another state will govern a particular issue in the case if that other state has a more significant relationship to that issue. Bishop, 389 So. 2d at 1001.

Flatirons neither provides authority that would expand Bishop's significant relationships test to a cause of action based on a state statutory remedy nor

---

[7] We note that, from a practical perspective, had Steinberg engaged in activity in, or had sufficient minimum contacts with, Colorado so to establish personal jurisdiction, Flatirons surely would have brought this suit in Colorado. While we need not, and do not, reach any constitutional issue, we do note that subjecting Steinberg to Colorado's civil theft statute – when it would defy a reasonable expectation to hale Steinberg into a Colorado court – may implicate the same due process principles upon which modern personal jurisdiction jurisprudence is based. In both its general jurisdiction jurisprudence, Daimler AG v. Bauman, 134 S. Ct. 746 (2014) and its specific jurisdiction jurisprudence, Bristol Meyers Squibb Co. v. Super. Ct. of Cal. San Francisco Cty., 137 S. Ct. 1773 (2017), the United States Supreme Court's recent trend has been to limit the reach of a court over a defendant where the activity has minimal affiliation with or connection to the forum state.

8

provides authority that would expand <u>Bishop</u>'s significant relationships test to a contract action. Flatirons mis-focuses its analysis on Yost's fraudulent conduct occurring in Colorado, rather than on Steinberg's innocent conduct resulting from its contractual relationship with the Yost Partnership, i.e., its receipt of funds in Florida.[8] Absent at least some controlling, or even persuasive, authority, we are not inclined to subject a Florida defendant to another state's civil theft statute when there is no allegation or inference that the Florida defendant undertook (or omitted) any activity in the other state; and of further consideration, when Florida maintains its own civil theft statute.

## B. *Flatirons's unjust enrichment claim*

After conducting an extensive evidentiary hearing on Flatirons's unjust enrichment claim, the trial court entered a detailed final judgment in Steinberg's favor. Essentially, the trial court found that Flatirons had failed to establish the elements of unjust enrichment.[9] We affirm because the trial court's findings are

---

[8] The dissent engages in the same analysis. In citing to <u>Hertz Corp. v. Piccolo</u>, 453 So. 2d 12 (Fla. 1984), the dissent seeks to establish that <u>Bishop</u>'s significant relationships test controls the instant case because Colorado's civil theft statute is substantive in nature rather than procedural. <u>See</u> dissenting opinion at 19-20. This detour, though, ignores the cause of action underlying <u>Hertz Corp</u>'s conflict of laws analysis: a tort alleging personal injury that arises from a motor vehicle accident.

[9] The elements of a cause of action for unjust enrichment are: (i) plaintiff has conferred a direct benefit on the defendant, who has knowledge thereof; (ii) defendant voluntarily accepts and retains the conferred benefit; and (iii) the circumstances are such that it would be inequitable for the defendant to retain the

9

supported by competent, substantial evidence. Specifically, the record supports the trial court's factual finding that Steinberg had no knowledge that the sums it received on January 20, 2009, were tainted in any way, or, for that matter, originated from Flatirons. Thus, the trial court correctly determined that Flatirons had not established that Steinberg knowingly and voluntarily accepted any direct benefit conferred upon it by Flatirons. E & M Marine Corp. v. First Union Nat'l Bank, 783 So. 2d 311, 312-13 (Fla. 3d DCA 2001); Coffee Pot Plaza P'ship v. Arrow Air Conditioning & Refrigeration, Inc., 412 So. 2d 883, 884 (Fla. 2d DCA 1982); Nursing Care Servs., Inc. v. Dobos, 380 So. 2d 516, 518 (Fla. 4th DCA 1980).[10]

Additionally, and alternately, the trial court held that Flatirons's unjust enrichment claim was precluded by Florida's four-year statute of limitations.[11] The

benefit without paying the value thereof to the plaintiff. Extraordinary Title Servs., LLC v. Fla. Power & Light Co., 1 So. 3d 400, 404 (Fla. 3d DCA 2009).

[10] The dissent suggests that the trial court's unjust enrichment verdict in Steinberg's favor was not supported by competent, substantial evidence. See dissenting opinion at 27-31. While different triers of fact certainly can reach different conclusions, our standard of review requires affirmance if competent, substantial evidence supports the trial court's findings. Reimbursement Recovery, Inc., 22 So. 3d at 682. The record supports Steinberg's good faith belief that its account held the sum of $1,814,824.56, and that the $1,000,000 it received from Yost was not tainted. The record also supports the inference that Flatirons's negligence contributed to Yost's fraudulent activities and that Flatirons was in a far better position than Steinberg to minimize Yost's damage. Thus, competent, substantial evidence exists in the record to support the trial court's conclusion that it would not be inequitable for Steinberg to retain the funds it received from Yost.

10

trial court concluded that Flatirons's cause of action accrued on January 20, 2009, when the Yost Partnership transferred the funds to Steinberg's Florida account. Flatirons's filed its complaint on February 1, 2013, more than four years after the alleged benefit was conferred.

The statute of limitations for an unjust enrichment claim begins to run at the time the alleged benefit is conferred and received by the defendant. Beltran, M.D., 125 So. 3d at 859; Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A., 938 So. 2d 571, 577 (Fla. 4th DCA 2006); Swafford v. Schweitzer, 906 So. 2d 1194, 1195-96 (Fla. 4th DCA 2005).

As it did below, Flatirons argues on appeal that, because its cause of action against Steinberg was "founded upon fraud," Florida's delayed discovery doctrine[12]

---

[11] Section 95.11 reads, in relevant part, as follows:

> Actions other than for recovery of real property shall be commenced as follows:
>
> **(3) Within four years.--**
>
> (k) A legal or equitable action on a contract, obligation, or liability not founded on a written instrument, including an action for the sale and delivery of goods, wares, and merchandise, and on store accounts.

§ 95.11(3)(k), Fla. Stat. (2013); Beltran, M.D. v. Vincent P. Miraglia, M.D., P.A., 125 So. 3d 855, 859 (Fla. 4th DCA 2013).

[12] Florida's delayed discovery doctrine is codified in section 95.031(2)(a), and reads, in relevant part, as follows:

> An action *founded upon fraud* under s. 95.11(3) . . . must be begun

applies, and the statute of limitations did not begin to run until Flatirons knew or should have known of Yost's theft, which at the earliest occurred in August of 2010. While a feature of Flatirons's unjust enrichment claim might have been Yost's fraud and deceit, Flatirons's unjust enrichment claim *against Steinberg* is not "founded upon fraud" so as to implicate Florida's delayed discovery doctrine.[13] Further, our Supreme Court has made clear that the delayed discovery doctrine is inapplicable to extend the limitations period for unjust enrichment claims. Davis v. Monahan, 832 So. 2d 708 (Fla. 2002); Brooks Tropicals, Inc. v. Acosta, 959 So. 2d 288, 296 (Fla. 3d DCA 2007).[14] Therefore, the trial court correctly ruled that Flatirons's unjust enrichment claim was barred by Florida's four-year statute of limitations.

---

within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed elsewhere in s. 95.11(3) . . . .

§ 95.031(2)(a), Fla. Stat. (2013) (emphasis added).

[13] In this respect, we disagree with the dissent's view on the applicability of the delayed discovery doctrine to this case. See dissenting opinion at 31-35. We also disagree with the dissent's view on the applicability of equitable tolling. See dissenting opinion at 35-37. Neither Yost's nor Steinberg's actions prevented Flatirons from a timely asserting of its rights.

[14] Without citation to any authority, Flatirons suggests that Davis has been abrogated by the Legislature's 2003 amendment to section 95.031(2)(a). We reject this argument without further comment.

**IV. Conclusion**

The trial court properly dismissed Flatirons's statutory claim against Steinberg and correctly ruled that Flatirons's unjust enrichment claim was precluded by Florida's statute of limitations. Additionally, the trial court's factual findings regarding Flatirons's unjust enrichment claim are supported by competent, substantial evidence.

Affirmed.

SALTER, J., concurs.

ROTHENBERG, C.J. (dissenting).

Flatirons Bank ("Flatirons"), a Colorado bank and the plaintiff below, appeals: (1) the trial court's order dismissing Count II of the amended complaint, which asserts a claim for civil theft under Colorado's rights in stolen property statute, Colo. Rev. Stat. §18-4-404 (2013), against the defendant below, the Alan W. Steinberg Limited Partnership ("Steinberg"); and (2) a final judgment entered in favor of Steinberg following a non-jury trial as to Flatirons' claim for unjust enrichment pled in Count I of the amended complaint. As will be demonstrated in this dissent, the trial court clearly erred by dismissing Count II and by entering final judgment in favor of Steinberg as to Count I.

First, the trial court erred by dismissing Count II without first performing a conflict of laws analysis, which requires the court to determine which state has the most significant relationship to the matter and, thus, which state's law should be applied. The majority attempts to cure this obvious error, but it too has erred because it has failed to follow clear precedent from the Florida Supreme Court and this Court specifying the analysis that must be performed and instead applies its own test. The record, however, reflects that had the requisite analysis been performed, the unassailable conclusion would have been that Colorado has the most significant relationship to the matter, and therefore, Colorado law should be

14

applied. And, under Colorado law, Flatirons has a viable "rights in stolen property" claim. Second, as to Count I, Flatirons' unjust enrichment claim, the majority affirms the trial court's findings that Flatirons failed to meet its burden of proof and that Flatirons' unjust enrichment claim is precluded by Florida's statute of limitations. I respectfully disagree as to both findings.

## THE FACTS

I agree with the majority opinion that the relevant facts are not in dispute. Yost Partnership, LP ("the Yost Partnership") was an investment vehicle that operated from October 1991 until August 2010. At all times relevant to this case, the Yost Partnership was managed and operated by Mark Yost ("Yost") in Colorado. The Yost Partnership accepted money from investors for the purpose of trading securities, sometimes on margin, and making other investments in companies and real estate. Steinberg, which is located in Florida, began making investments in the Yost Partnership in 2000. Steinberg's investments with the Yost Partnership from January 10, 2000 through January 2, 2004 totaled $2,200,000, and these investments were sent to, accepted by, and managed by Yost in Colorado.

By all accounts, the Yost Partnership was a legitimate company that suffered a sharp decline in 2005 due to bad investment decisions made by Yost, who is the President, the Chairman of the Board, and the largest shareholder of the Yost

15

Partnership, and who was domiciled in Colorado. In order to hide this decline, the Yost Partnership began defrauding its investors by misrepresenting the company's assets and the value of each of the limited partner's assets.

On September 29, 2008, Yost and other investors purchased Flatirons, a bank in Boulder, Colorado, through a holding company. Yost, who held the largest shares in the holding company, was able to secure the positions of president, Chairman of the Board, and loan officer, and he also became the contact person for Flatirons. Based on these roles, Yost opened two lines of credit at Flatirons—one on January 16, 2009 for L. John Drahota, and the other on February 12, 2009 for Peter Gotsch. Neither Drahota nor Gotsch, who were personal friends of Yost, were aware of or authorized these lines of credit. Yost forged their signatures on the documents that were necessary to open these lines of credit and on the subsequently issued promissory notes and loan agreements. After fraudulently securing these lines of credit, Yost submitted false collateral information, financial statements, and tax returns. Thereafter, by using the Drahota and Gotsch lines of credit, Yost fraudulently caused Flatirons to transfer a total of $3,845,000 from Flatirons to various accounts that Yost controlled, an amount which was then used by Yost to make payments to the Yost Partnership investors in order to conceal the declining value of their Yost Partnership membership interests. All of these acts were committed in Colorado.

16

This appeal relates to the $1 million Yost caused Flatirons to transfer to Steinberg in Florida, through the use of the Colorado Drahota line of credit, as a purported "redemption" of a portion of Steinberg's investments in the Yost Partnership. On January 20, 2009, using the Drahota line of credit, Yost had $1 million transferred to an account at Elevations Credit Union ("the credit union") in Colorado in the name of an entity controlled by Yost; transferred $1,050,000 from the first credit union account to another account at the credit union in Colorado in the name of the Yost Partnership; and then transferred $1 million from the Yost Partnership account in Colorado to Steinberg in Florida. However, on January 20, 2009, when Steinberg received the $1 million, Steinberg was clearly not entitled to the $1 million return on its investments because, at the time, Steinberg's membership interest in the Yost Partnership was worth only $138,179.90.

Yost's fraudulent activities were not discovered until August 2010, when Flatirons contacted Gotsch to inquire about a missed loan payment. This phone call led to a full investigation and the revelation of Yost's fraud. It was not until March 2012, however, that Flatirons discovered that Steinberg had received $1 million of the stolen funds. Based upon a request by the Receiver appointed during the Yost Partnership investigation, Flatirons did not immediately initiate its action against Steinberg. However on February 1, 2013, less than one year after the

17

discovery of the $1 million transfer to Steinberg, Flatirons filed its complaint seeking the return of the fraudulently transferred $1 million to Steinberg.

As previously stated, Flatirons appeals the trial court's dismissal of Count II filed under Colorado's rights in stolen property statute, Colo. Rev. Stat. § 18-4-405, and the final judgment entered in favor of Steinberg as to Flatirons' unjust enrichment claim pled in Count I. Each ruling and the majority's findings regarding Counts I and II will be addressed below.

## ANALYSIS

### I. **Dismissal of Count II**

The trial court dismissed Count II of Flatirons' amended complaint, which alleges statutory civil theft and seeks recovery under Colorado's rights in stolen property statute, C.R.S. § 18-4-405. The trial court dismissed Count II based on its conclusion that because the lawsuit was filed in Florida, and there exists a similar statute in Florida, a claim under the Colorado statute could not proceed in Florida. However, as will be fully discussed below, the trial court clearly and reversibly erred by dismissing Flatirons' Colorado rights in stolen property claim without first performing a conflict in laws analysis and applying the "significant relationships test" as set forth in the Restatement (Second) of Conflict of Laws §145-146 (1971), adopted by the Florida Supreme Court in Bishop v. Florida Specialty Paint Co., 389 So. 2d 999, 1001 (Fla. 1980).

18

In adopting the Restatement (Second), the Florida Supreme Court in <u>Bishop</u> specifically stated as follows:

> Instead of clinging to the traditional lex loci delicti rule, we now adopt the "significant relationships test" as set forth in the Restatement (Second) of Conflict of Laws §145-146 (1971):
> s 145. The General Principle
>
> (1) The rights and liabilities of the parties with respect to an issue
> in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in s 6.
>
> (2) Contacts to be taken into account in applying the principles of s 6 to determine the law applicable to an issue include:
>
> > (a) the place where the injury occurred,
> > (b) the place where the conduct causing the injury occurred,
> > (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> > (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

<u>Bishop</u>, 389 So. 2d at 1001.

Several years after <u>Bishop</u> was decided, the Florida Supreme Court clarified that when determining whether to apply Florida law or the law of another state under Florida's conflict of laws jurisprudence, the court must first determine if substantial rights and duties are affected or, in other words, if substantive law is an issue. <u>Hertz Corp. v. Piccolo</u>, 453 So. 2d 12, 14 (Fla. 1984). "[I]f substantive law

be an issue, the rule adopted by this court in [Bishop] applies: '[T]he local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship.'" Id. at 14 (internal citations omitted) (some alteration in original). In other words, the Court held that if the alternative state's statute is substantive, then the significant relationships test adopted in Bishop controls.

This Court and other appellate courts of this state have performed the conflict of laws analysis and have applied the significant relationships test adopted in Bishop with respect to tort issues. For example, this Court applied the test set forth in Bishop in Avis Rent-A-Car Systems, Inc. v. Abrahantes, 517 So. 2d 25 (Fla. 3d DCA 1987), and concluded that, although the lawsuit was filed in Florida, Cayman Island law should have been applied, and therefore, the trial court's failure to apply Cayman Island law was reversible error. See also Barker v. Anderson, 546 So. 2d 449, 450 (Fla. 1st DCA 1989) (concluding that the significant relationships test controlled the issue of which state's law was applicable, where the lawsuit was filed in Florida but the injury occurred in Georgia and, after performing the Bishop analysis, finding that the trial court correctly applied Georgia law).

The trial court erred by failing to follow Bishop, Abrahantes, and Barker, and by dismissing Flatirons' rights in stolen property claim filed pursuant to

20

Colorado law, Colo. Rev. Stat. §18-4-405, based on its mistaken conclusion that because there is a similar Florida statute, Florida law must be applied in the Florida court. The issue is not whether Florida law **could** be applied, but rather, the issue is whether Florida law **should** be applied.

Colorado Revised Statute section 18-4-405, Colorado's rights in stolen property statute, provides that the transfer of stolen property to another does not divest the owner of his right to the property, and the owner may maintain an action against **any person in whose possession he finds the property**. Colorado's rights in stolen property statute differs from Florida law because Florida law protects innocent third parties in possession of stolen property while Colorado's law does not. Because the difference between Colorado law and Florida law regarding this issue is substantive, as opposed to procedural, the trial court was required to perform a conflict of laws analysis to determine whether Colorado or Florida has the most significant relationship to the occurrence and the parties. See Hertz Corp., 453 So. 2d at 14 ("The controlling question therefore is whether the Louisiana direct action statute is substantive. If it is, then the *Bishop* rule dictates that the Louisiana statute controls the question of indispensable parties. If the Louisiana statute is procedural, then Florida Law controls.").

Had the trial court performed the significant relationships test, it would have been required to consider the following undisputed record evidence. Flatirons is a

Colorado bank with its principal place of business in Boulder, Colorado. Over $3 million was stolen from Flatirons in Colorado by Yost, who resided in Colorado. The fraudulent lines of credit that were opened by Yost, were opened in Colorado. One million dollars of the $3 million stolen by Yost from Flatirons in Colorado was transferred from Flatirons to a Colorado credit union account in the name of an entity controlled by Yost, and then the funds were transferred from that account to another account at the same Colorado credit union in the name of the Yost Partnership. The Yost Partnership is an Illinois limited partnership, which was managed and operated by Yost in Colorado since 2000. One million dollars of the stolen funds were ultimately transferred to an account controlled by Steinberg. Steinberg, a New York limited partnership with its principal place of business in Florida, was an investment vehicle with over $60 million in assets, and it made several investments in the Yost Partnership, investments which were managed by Yost in Colorado between January 2000 and January 2004.

As these undisputed facts clearly reflect, the theft and the injury occurred in Colorado; the party who committed the theft resided in Colorado; and the entity the funds were stolen from was located in Colorado. Thus, under <u>Bishop</u>, the law of Colorado **must** be applied unless Florida has a more significant relationship to the theft and resulting loss. **"[T]he local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the**

22

**particular issue, some other state has a more significant relationship. . . .”** Bishop, 389 So. 2d at 999 (emphasis added); see also Hertz Corp., 453 So. 2d at 14. The only relationship Florida has to the theft is that the stolen funds were transferred to Steinberg, whose principal place of business was in Florida. Because Florida does not have a more significant relationship to the case and the injury occurred in Colorado, Colorado law controls.

The trial court erred by failing to perform a conflict of laws analysis, and for that reason alone, the dismissal of Count II must be reversed as a matter of law. The majority, however, performs its own analysis, affirms the dismissal of Count II, Flatirons’ claim under Colorado’s rights in stolen property statute, and concludes that based on the four corners of the amended complaint and the extensive exhibits, there is **no nexus** between the state of Colorado and Flatirons’ claim against Steinberg. The majority’s “no nexus” conclusion is premised on its finding that there is nothing alleged in the amended complaint or reflected in the exhibits that would **warrant** subjecting Steinberg to a Colorado statutory cause of action.

The majority is, however, confusing personal jurisdiction jurisprudence with a conflict of laws analysis. The issue is not whether Flatirons could have or should have filed its complaint against Steinberg in Colorado. The complaint was filed in Florida, and there is no dispute that venue in Florida is proper. The issue is,

23

whether, after performing a conflict of laws analysis, as adopted by the Florida Supreme Court in <u>Bishop</u>, Colorado law should be applied in Count II.

To reiterate, under section 145 of the Restatement (Second) of Conflict of Laws, adopted by the Florida Supreme Court in <u>Bishop</u>, when determining which state has the most significant relationship to the "occurrence and the parties," the court is required to consider:

    (a) the place where the injury occurred,
    (b) the place where the conduct causing the injury occurred,
    (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
    (d) the place where the relationship, if any, between the parties is centered.

<u>Bishop</u>, 389 So. 2d at 1001. Had the trial court and the majority performed the significant relationships test, they would have been required to consider the following undisputed record evidence as it relates to the four factors above.

**(a) <u>The place where the injury occurred</u>**

The $1 million transferred to Steinberg was stolen from Flatirons in Colorado. Flatirons is a Colorado financial institution located in Colorado and thus the injury occurred in Colorado. Therefore, as to the first factor, only Colorado has a significant relationship to the occurrence.

**(b) <u>The place where the conduct causing the injury occurred</u>**

The conduct that caused the injury to Flatirons also occurred in Colorado, not Florida. Yost opened fraudulent lines of credit at Flatirons in Colorado, and he

forged the signatures on the documents necessary to open these lines of credit and on the promissory notes and loan agreements in Colorado. After submitting this false collateral information, financial statements, and tax returns in Colorado, Yost fraudulently caused Flatirons to transfer $3,845,000 from Flatirons to various accounts in Colorado. The $1 million ultimately transferred to Steinberg was transferred from the funds stolen in Colorado. Thus, as to this factor, only Colorado has a significant relationship to the occurrence.

(c) **The domicile, residence, nationality, place of incorporation and place of business of the parties**

This factor is weighted equally as to Colorado and Florida. Yost was domiciled in Colorado, where all of these acts and the injury occurred. The Yost Partnership was managed and operated by Yost in Colorado since 2000. On the other hand, Steinberg is a New York limited partnership with its principal place of business in Florida. Thus, as to this factor, both Colorado and Florida have a significant relationship to the occurrence and the parties.

(d) **The place where the relationship, if any, between the parties is centered**

Colorado is also the place where the relationship between the parties was centered. Steinberg, an investment vehicle, invested substantial money with the Yost Partnership. These investments were sent to the Yost Partnership, and Yost managed the investments in Colorado. In order to hide the results of Yost's poor investment decisions, Yost began defrauding the Yost Partnership investors by

25

issuing false reports regarding the company's assets and creating fraudulent lines of credit to funnel money into the Yost and Yost Partnership accounts. The $1 million Yost wired to Steinberg was not earned by the Yost Partnership's investments. Rather, it was stolen from Flatirons. Thus, the relationship between Yost, the Yost Partnership, and Steinberg was based on Steinberg's investments in the Colorado-based Yost Partnership, and the relationship between Flatirons and Steinberg was as a result of Yost's attempt to hide the poor health of the Yost Partnership and Yost's misrepresentation of the company's assets.

In summary, the trial court erred by dismissing Count II without performing a conflict in laws analysis as mandated by Bishop. The majority has also erred by (1) failing to apply Bishop, Abrahates, and Barker, decisions from the Florida Supreme Court, this Court, and the First District Court of Appeal; (2) applying its own "nexus" analysis; and (3) incorrectly determining that the allegations and the exhibits were insufficient to "warrant" subjecting Steinberg to a Colorado statutory cause of action. The allegations and exhibits clearly establish that Colorado has the most significant relationship to the occurrence at issue in Count II—Yost's theft of money from a Colorado bank and his transfer of that money to Steinberg in Florida.

II. **Count I—unjust enrichment**

26

After conducting a non-jury trial on Flatirons' unjust enrichment claim, the trial court entered a final judgment in favor of Steinberg, finding that: (1) Flatirons failed to satisfy its burden of proof; and (2) the unjust enrichment claim was barred by the statute of limitations. The majority affirms these findings. For the following reasons, I disagree.

**(a) <u>Flatirons met its burden of proof</u>**

To prevail on its claim for unjust enrichment, Flatirons was required to prove that: (1) Flatirons conferred a benefit upon Steinberg; (2) Steinberg had knowledge of the benefit conferred; (3) Steinberg voluntarily accepted and retained the conferred benefit; and (4) the circumstances are such that it would be inequitable for Steinberg to retain the benefit conferred without paying Flatirons the value of that benefit. <u>Fla. Power Corp. v. City of Winter Park</u>, 887 So. 2d 1237, 1242 n.4 (Fla. 2004); <u>Extraordinary Title Servs., LLC v. Fla. Power & Light Co.</u>, 1 So. 3d 400, 404 (Fla. 3d DCA 2009).

*(1) Flatirons conferred a benefit upon Steinberg*

At trial, the parties stipulated that the $1 million Steinberg received from Yost came from (was stolen from) Flatirons. Direct contact or privity between Flatirons and Steinberg is not required. <u>See</u> <u>Aceto Corp. v. TherapeuticsMD, Inc.</u>, 953 F. Supp. 2d 1269, 1288 (S.D. Fla. 2013); <u>Williams v. Wells Fargo Bank N.A.</u>, 2011 WL 4368980, at *9 (S.D. Fla. 2011).

27

*(2) Steinberg had knowledge of the benefit conferred*

It was undisputed that Steinberg had full knowledge of the transfer of $1 million into its account. The majority concludes that the record supports the trial court's finding that Steinberg had no knowledge that the money it received was tainted. However, the majority does not provide any authority in support of its position that Florida law requires that the recipient of the conferred benefit, Steinberg, must have had knowledge that the benefit conferred was **fraudulent**. The only citation provided by the majority, E & M Marine Corp. v. First Union National Bank, 783 So. 2d 311, 312-13 (Fla. 3d DCA 2001), does not support that position. The issue in E & M Marine was whether First Union, which held a promissory note on a thirty-two foot vessel and which took possession of the vessel after the vessel was repaired, should be required to pay for the repairs when the owner failed to pay for the repairs and the owner defaulted on the note. This Court concluded that First Union was not liable for the repairs because it did not request, authorize, or have knowledge of the repairs.

In the instant case, Steinberg was aware of and accepted the fraudulent transfer. Although Steinberg might not have initially known that the money transferred to its account had been stolen from Flatirons and that Steinberg was not entitled to a $1 million return on its investment in the Yost Partnership, Steinberg was ultimately made aware of the stolen nature of the funds, and it is undisputed

28

that despite Steinberg's full appreciation of the theft and its lack of entitlement to any appreciation or return on its lost investment in the Yost Partnership, it still refused to return the illegally transferred funds to which Steinberg clearly was not entitled.

*(3) Steinberg voluntarily accepted and retained the benefit conferred*

It is undisputed that between January 2000 and January 2004, Steinberg invested $2.2 million in the Yost Partnership. Gary Frohman, the corporate representative of Steinberg, testified at trial that he was aware that the Yost Partnership had the ability to trade on margin and that Steinberg could lose all or part of its capital investment, and this is exactly what happened. By 2009, when Steinberg received the $1 million stolen from Flatirons, the Yost Partnership's assets totaled only $1.2 million, and Steinberg's $2.2 million investment had shrunk to $138,179.90. Thus, the $1 million "redemption" payment made to Steinberg was a benefit that Steinberg was not entitled to receive.

Although Steinberg was unaware that Yost had lost most of Steinberg's investment at the time it received the $1 million "redemption" payment, when Steinberg learned the truth—that when it received the $1 million transfer its investment was valued at only $138,179.90, and thus it was not entitled to a $1 million return or a redemption of its investment—it refused to return the funds that it then knew had been stolen from Flatirons.

**(4)** *The circumstances are such that it would be inequitable for Steinberg to retain the $1 million*

Although a thief can transfer legal title to money to a good faith recipient who has given good and adequate consideration for the money, Steinberg gave absolutely no consideration for the $1 million windfall it received. That is because when it received the $1 million from Yost, the actual value of its investment totaled only $138,179.90, and thus it had realized only a loss, not a profit from its investment. Steinberg had **lost** over $2 million. It did not **earn** $1 million from its $2.2 million investment.

To allow Steinberg to retain the $1 million it clearly is not entitled to would be inequitable because the $1 million Steinberg received was stolen from Flatirons by Yost. The Yost Partnership operated as a legitimate investment company for many years. It was only after Yost's poor investment decisions resulted in a sharp decline of the company's assets that Yost began defrauding the investors and stealing money from Flatirons to hide the true value of the company and the investors' assets. Yost's transfer of the stolen funds to Steinberg, whose investment shrank from $2.2 million to $138,179.90, was made in furtherance of Yost's scheme to hide the true value of Steinberg's investment. To allow Steinberg to keep the $1 million it is clearly not entitled to would result in an unjustified windfall for Steinberg to the detriment of an innocent victim—Flatirons.

It is important to note that Flatirons is an innocent victim. This was not a Ponzi scheme, and Flatirons was not an investor. Steinberg was aware of the risk associated with its investment; Yost attempted to make investment decisions that would generate a profit for the Yost Partnership investors; Yost's investment decisions resulted in the loss of most of Steinberg's $2.2 million investment, not a profit of $1 million; and if Steinberg is permitted to retain this $1 million windfall, Flatirons, an innocent victim, will be made to pay for Yost's poor investment decisions. This is a classic unjust enrichment claim.

**(b)** **Flatirons' unjust enrichment claim is not barred by the statute of limitations**

The trial court and the majority have concluded that Flatirons' unjust enrichment claim is barred by Florida's four-year statute of limitations. The majority correctly notes that the statute of limitations for an unjust enrichment claim begins to run when the alleged benefit is conferred and received by the defendant. See § 95.11, Fla. Stat. (2013); Beltran, M.D. v. Vincent P. Miraglia, M.D., P.A., 125 So. 3d 855, 859 (Fla. 4th DCA 2013). The monies at issue were transferred to Steinberg on January 20, 2009, but Flatirons filed its lawsuit on February 1, 2013, four years and eleven days after the money was transferred. In other words, eleven days too late. Thus, unless either the delayed discovery doctrine or equitable tolling applies, Flatirons' unjust enrichment claim is barred by the statute of limitations.[15]

31

*(1) The delayed discovery doctrine*

The majority concludes that the delayed discovery doctrine is inapplicable to unjust enrichment claims and cites to Davis v. Monahan, 832 So. 2d 708 (Fla. 2002), and Brooks Tropicals, Inc. v. Acosta, 959 So. 2d 288, 296 (Fla. 3d DCA 2007). However, neither Davis nor Brooks prohibit application of the delayed discovery doctrine to unjust enrichment claims **founded on fraud**. In fact, the Florida Supreme Court in Davis specifically noted the fraud exception to the limitation of the application of the delayed discovery doctrine. Davis, 832 So. 2d at 709. In quashing the Fourth District Court of Appeal's decision applying the delayed discovery doctrine to evaluate the plaintiff's claims for breach of fiduciary duty, civil theft, conspiracy, conversion, and unjust enrichment, the Florida Supreme Court specifically recognized that although "the Florida Legislature has stated that a cause of action accrues or begins to run when the last element of the cause of action occurs," there is an exception "for claims of fraud and products liability in which the accrual of the causes of action is delayed until the plaintiff

---

[15] Flatirons correctly does not rely on the doctrine of equitable estoppel, which requires misconduct by the opposing party, because Flatirons does not contend that Steinberg was guilty of any misconduct. See Major League Baseball v. Morsani, 790 So. 2d 1071, 1076-77 (Fla. 2001) (noting that equitable estoppel differs from other legal theories that may relieve a party of the statute of limitations, such as equitable tolling, in that "[e]quitable estoppel presupposes a legal shortcoming in a party's case that is directly attributable to the opposing party's misconduct").

32

either knows or should know that the last element of the cause of action occurred."

Id. at 709 (footnote omitted).

Section 95.11(3), Florida Statutes (2013), is the applicable statute governing the limitations period for Flatirons' unjust enrichment claim, which the parties agree is four years. Florida's delayed discovery doctrine, as codified in section 95.031(2)(a), Florida Statutes (2013), provides, in relevant part, as follows:

> An action **founded upon fraud** under s. 95.11(3) . . . must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed elsewhere in s. 95.11(3) . . . .

(emphasis added).

Flatirons' unjust enrichment claim against Steinberg is founded upon fraud. Yost fraudulently misappropriated over $3 million from Flatirons and transferred $1 million of the $3 million to Steinberg in 2009. Yost concealed the fraudulent nature of his acts. Flatirons first discovered the misappropriation in 2010 and the fraudulent transfer to Steinberg in 2012. Flatirons filed its lawsuit against Steinberg within one year of discovering the fraudulent transfer to Steinberg, well within the four-year statute of limitations of its initial discovery of Yost's wrongdoing.

The Florida Supreme Court and other courts have applied the delayed discovery doctrine to similar facts. For example, the Florida Supreme Court in

33

<u>Miami Beach First National Bank v. Edgerly</u>, 121 So. 2d 417 (Fla. 1960), affirmed this Court's decision to apply delayed discovery principles in an action filed by the Edgerlys (the depositors) against the bank for cashing a check drawn from their account which allegedly contained a forged endorsement. The Court held that the statute of limitations did not begin to run until discovery of the fact that a right, which will support a cause of action, has been invaded. <u>Id.</u> at 420. "[T]he statute [of limitations] did not begin to run until the depositors knew, or in the exercise of ordinary business care would have discovered, that the endorsement on the subject check was forged, which is a question of fact to be determined by the trier of fact." <u>Id.</u>

In <u>Butler University v. Bahssin</u>, 892 So. 2d 1087 (Fla. 2d DCA 2004), the Second District Court of Appeal applied the delayed discovery doctrine to Butler University's ("Butler") action founded on the misappropriation of Butler's property by George Verdak, a former employee of Butler, to an innocent recipient, Jennifer Bahssin. The complaint alleged that when Verdak left Butler, he took valuable dance costumes, sets, and other items belonging to Butler with him and sold them to Bahssin, an art dealer. In applying the delayed discovery doctrine, the Second District noted that "[t]he facts contained in Butler's proposed amended complaint are that it was prevented from discovering the loss of its property

34

through the active concealment of Verdak's original misappropriation by his successors in interest until Bahssin purchased the costumes in 2002." Id. at 1092.

In both Edgerly and Butler, the delayed discovery doctrine was applied to causes of action to recover property from a third party **who had not committed the fraud** that resulted in a loss to the owner of the property. Although the bank in Edgerly did not endorse the check, the Florida Supreme Court applied the delayed discovery doctrine to allow the account holder to seek recovery of its misappropriated funds from the bank that cashed the allegedly forged check. In Butler, the Second District applied the delayed discovery doctrine to allow Butler to seek recovery of its misappropriated costumes, etc. from Bahssin, who innocently purchased the stolen costumes from Verdak.

It is therefore error to preclude the application of the delayed discovery doctrine to Flatirons' unjust enrichment claim against Steinberg. Although Steinberg did not commit the fraud, neither did Butler or Bahssin. However, in all three cases, the action was "founded upon fraud," and the injured party did not immediately discover the theft due to the fraudster's concealment of the fraud.

*(2) Equitable tolling*

The majority fails to address Flatirons' alternative equitable tolling argument. "The doctrine of equitable tolling was developed to permit under certain circumstances the filing of a lawsuit that otherwise would be barred by a

35

limitations period." Machules v. Dep't of Admin., 523 So. 2d 1132, 1133 (Fla. 1988) (footnote omitted).

> The tolling doctrine is used in the interests of justice to accommodate both a defendant's right not to be called upon to defend a stale claim and a plaintiff's right to assert a meritorious claim when equitable circumstances have prevented a timely filing. Equitable tolling is a type of equitable modification which focuses on the plaintiff's excusable ignorance of the limitations period and on [the] lack of prejudice to the defendant.

Id. at 1134 (citations and quotation omitted) (alteration in original). Equitable tolling, unlike equitable estoppel, does not require active deception or misconduct, and "[g]enerally, the tolling doctrine has been applied when the plaintiff has been misled or lulled into inaction, has in some extraordinary way been prevented from asserting his rights, or has timely asserted his rights mistakenly in the wrong forum." Id.

In the instant case, Yost concealed the fraudulent transfer of monies from various Flatirons accounts to the Yost Partnership investors in order to deceive the investors about the sharp decline in the company's and the investors' assets. Based on his position of trust, Yost was able to open lines of credit by submitting forged documents and false supporting documents without garnering suspicion or a high level of scrutiny. When Flatirons discovered the thefts, it conducted an investigation and eventually learned that $1 million of the stolen funds had been transferred into Steinberg's account. Based on a request by the Receiver, Flatirons

delayed the filing of its complaint for approximately eleven months. Due to the concealment by Yost and because Flatirons honored the Receiver's request, Flatirons filed its complaint on February 1, 2013. The filing of the complaint was within one year of Flatirons' discovery of the $1 million transfer to Steinberg, but eleven days too late if the limitations period is calculated to run from the date of the **transfer** as opposed to the date of the **discovery of the transfer.**

Steinberg is clearly not entitled to the $1 million it received from Yost. At the time of the transfer, Steinberg's investment had shrunk to $138,179.90 due to poor investment decisions made by Yost, not due to any fraud. Thus, the $1 million represents a windfall to which Steinberg is not entitled, to the detriment of Flatirons, an innocent victim. Under these circumstances, the doctrine of equitable tolling should be applied to allow Flatirons to pursue its unjust enrichment claim against Steinberg.

### CONCLUSION

The trial court erred by dismissing Count II, a claim brought by Flatirons under Colorado Revised Statutes, section 18-4-405, without performing a conflict of laws analysis as required by Florida law. The majority also errs by failing to properly perform the same conflict of laws analysis. Thus, the dismissal of Count II should be reversed and remanded with directions to the trial court to perform a

37

conflict of laws analysis under the test adopted by the Florida Supreme Court in Bishop.

The trial court erred by entering judgment in favor of Steinberg on Count I, unjust enrichment, because Flatirons met its burden of proof and the unjust enrichment claim is not barred by the statute of limitations. Under the delayed discovery doctrine, the unjust enrichment claim was timely filed, or in the alternative, equitable tolling is applicable based on the circumstances of this case, and therefore, Flatirons should be permitted to pursue its unjust enrichment claim against Steinberg.

Accordingly, I respectfully disagree with the majority opinion.